489 So.2d 147 (1986)
Margarita J. PALMA, Appellant,
v.
STATE FARM FIRE & CASUALTY CO., a Foreign Corporation, Appellee.
No. 84-1973.
District Court of Appeal of Florida, Fourth District.
May 28, 1986.
Rehearing and Certification of Question Denied June 25, 1986.
Ronald V. Alvarez of Ronald V. Alvarez, P.A., West Palm Beach, and Janet Freeman, Palm Beach, for appellant.
Stephen C. McAliley of Brennan, McAliley, Hayskar, McAliley & Jefferson, P.A., West Palm Beach, for appellee.
DELL, Judge.
Margarita Palma appeals from a decision of the trial court which declared that thermographic examinations do not constitute necessary medical services under the Florida No-Fault Act, section 627.736(1), Florida Statutes (1983).
After appellant began treatment for injuries suffered in an automobile accident, her treating chiropractors ordered a thermographic examination. When appellant submitted the $600 bill incurred for the thermographic examination, appellee denied payment. Thereafter appellant brought *148 suit and wrote to the office of the insurance commissioner requesting an investigation of appellee's practice of denying payment for thermographic examinations. Appellee denied that its failure to pay the bill constituted an unfair claim practice, and alleged that thermographic examinations are medically unnecessary. The trial court summarized the questions presented in appellee's counterclaim for declaratory relief as follows:
The action for declaratory relief asked the Court to declare that thermographic examinations in musculoskeletal injuries and nerve root impingement were not necessary medical treatment as defined under Florida Statute 627.736 (Personal Injury Protection) and, therefore, were not reimbursable to the plaintiff, or any plaintiff, under her PIP coverage in the insurance policy issued by State Farm. The policy language tracked F.S. 627.736.
State Farm also asked the Court to declare that its refusal to pay for thermograms and claims involving musculoskeletal injuries or nerve root impingement did not constitute an unfair business practice under F.S. 624.155, commonly known as the Civil Remedies Act.
The court heard testimony from numerous medical expert witnesses. Appellant's experts testified that thermograms had diagnostic value and constituted a necessary medical service. Appellee's experts testified that thermograms were in an investigational or experimental stage, were not widely accepted by the practicing peer group as a diagnostic tool for musculoskeletal injuries, and were basically without diagnostic value with regard to musculoskeletal disease or nerve root impingement. The court held in a twenty-eight page final judgment that:
1... . thermography, when used as a diagnostic tool in musculoskeletal disease and nerve root impingement, is not a necessary medical service within the meaning of Florida Statute 627.726(1) and bills for such diagnostic studies submitted to State Farm Fire & Casualty need not be paid by it.
2... . it does not constitute an unfair claims practice, within the meaning of Florida Statute 624.155(1), for State Farm Fire & Casualty to refuse to pay thermography bills in such cases for the reason that these diagnostic studies do not constitute a necessary medical service. See also Florida Statute 624.155(5).
The parties' respective arguments can be simply stated as follows. Appellant claims that the court erred when it narrowly defined the term "necessary medical services" instead of construing it broadly in her favor. She argues that the evidence established that the thermographic examinations performed in her case constituted a necessary medical service, and therefore she is entitled to reimbursement pursuant to section 627.736. Appellant also argues that the trial court was influenced by considerations outside the record, and that its declaratory judgment is advisory in nature to the extent that the judgment adjudicates rights of parties not before the court. Appellee contends that it should not be required to pay because thermographic examinations have no value in the diagnosis of musculoskeletal disease or nerve root impingement, and therefore do not constitute necessary medical services.
The issue for our determination is whether thermographic examinations constitute a necessary medical service under section 627.736 which provides:
(1) REQUIRED BENEFITS.  Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured, relatives residing in the same household, ...
(a) Medical benefits.  Eighty percent of all reasonable expenses for necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing, *149 in accordance with his religious beliefs.
The insurance policy provided only that the insurer would pay eighty percent of the "reasonable charges incurred for necessary... medical services." Since neither the statute nor the policy defines the term "necessary medical services," the trial court looked to the Workers Compensation Act, section 440.13, Florida Statutes (1983) and adopted three parts of the definition contained therein. The trial court concluded that a "medically necessary" diagnostic study as contemplated by section 627.736(1) must:
1. be widely accepted by the practicing peer group;
2. be based upon scientific criteria accepted by the majority of that peer group; and
3. not be of an experimental or investigative nature.
Having thus construed the statute, the trial court ruled that thermograms did not meet the criteria for "necessary medical services." Appellant claims that this definition is too restrictive and that the trial court should have interpreted the term liberally in favor of the insured as a matter of law. We agree.
The policy of the courts of Florida when construing provisions of the Florida No-Fault Act has always been to construe the act liberally in favor of the insured:
First of all, § 627.731 thereof states that the purpose of the act is to provide for insurance benefits to be paid under motor vehicle policies without regard to fault. We think, therefore, the act was intended to broaden insurance coverage while at the same time reasonably limiting the amount of damages which could be claimed. The interpretation placed upon the act by the court below in the factual context of this case had the effect of reducing the scope of insurance coverage.
Farley v. Gateway Insurance Company, 302 So.2d 177, 179 (Fla. 2d DCA 1974) (emphasis added). See also Charter Oak Fire Insurance Company v. Regalado, 339 So.2d 277, 278 (Fla. 3d DCA 1976).
While the record contains evidence which supports the trial court's finding that thermography is of unproven and dubious value in the diagnosis of musculoskeletal disease and nerve root impingement,[1] such evidence does not support the trial judge's conclusion that the use of thermography in the instant case did not constitute a necessary medical service under the No-Fault Act. The broad scope of the medical services covered by the No-Fault Act is highlighted by the inclusion of benefits for remedial treatment and services for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs. § 627.736(1)(a).
In Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 4th DCA 1976), we said:
The primary guide to statutory interpretation is to determine the purpose of the legislature. Tyson v. Lanier, 156 So.2d 833 (Fla. 1963). Uncertainty should be resolved by an interpretation that best accords with the public benefits. Sunshine State News Company v. State, 121 So.2d 705 (Fla.App. 1960). It is not the function of the judicial branch to supply omissions of the legislature. Brooks v. Anastasia Mosquito Control District, 148 So.2d 64 (Fla.App. 1963).
Id. at 1023-24.
Here, a board certified radiologist, two board certified orthopedic surgeons, a board certified neurologist, and appellant's *150 treating chiropractic physician all testified that the thermographic examination as related to appellant constituted necessary medical services for treatment of the injury she received in the automobile accident. We hold the trial judge's definition of necessary medical service too restrictive to comport with a liberal interpretation of the No-Fault Act.
Additionally, we conclude that the trial court exceeded its jurisdiction when it ruled that appellee need not pay future bills for thermographic examinations. The record shows that appellee had paid all other outstanding claims for thermographic examinations, and that no other insured was before the court or represented in this action.
Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal injury on the basis of a hypothetical "state of facts which have not arisen" and are only "contingent, uncertain, [and] rest in the future."
LaBella v. Food Fair, Inc., 406 So.2d 1216, 1217 (Fla. 3d DCA 1981).
Therefore we hold that the trial court erred when it prospectively declared that appellee need not pay future bills submitted to it for thermographic diagnostic studies.
Accordingly, we reverse and remand this cause to the trial court with instructions to enter judgment in favor of appellant, and to determine and award appellant taxable costs and reasonable attorney's fees incurred in the proceedings before the trial court and on appeal.
REVERSED and REMANDED.
ANSTEAD and WALDEN, JJ., concur.
NOTES
[1] We note that the trial court chose to ignore the conclusion reached by the Second District Court of Appeal in deciding the question of admissibility of testimony and evidence concerning thermographic examinations. The second district held that thermography when "used by qualified health-care professionals to reveal the presence of soft tissue injuries such as lower back sprains and strains, is a sufficiently reliable and acceptable `scientific-medical' diagnostic procedure, and, therefore, testimony and evidence relating to a particular thermographic study is admissible under appropriate circumstances." Fay v. Mincey, 454 So.2d 587, 593 (Fla. 2d DCA 1984) (footnote and citations omitted).