530 So.2d 356 (1988)
John FARMER, Appellant,
v.
PROTECTIVE CASUALTY INSURANCE COMPANY, Appellee.
No. 87-2052.
District Court of Appeal of Florida, Second District.
July 27, 1988.
Rehearing Denied August 29, 1988.
*357 Raymond A. Tavares, Tampa, for appellant.
James J. Evangelista of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tampa, for appellee.
RYDER, Acting Chief Judge.
On May 21, 1984, appellant was injured in an automobile accident while operating a motor vehicle owned by a Ms. Betty Blocker. Appellant suffered injuries to his head and arm and was admitted to the hospital for treatment of a complex laceration of his nose.
Ms. Blocker had an automobile insurance policy with appellee. The policy provided PIP benefits in the amount of $10,000.00.
On December 24, 1984, appellant applied for PIP benefits under Ms. Blocker's policy seeking lost wages from May 21, 1984 through June 21, 1984 and medical expenses for treatment rendered and future reconstructive surgery to his nose. Appellee paid wage loss benefits for the requested period. Appellee, also, paid all medical expenses for treatment to appellant's face and nose through January 25, 1985, including the impending reconstructive surgery performed on January 24, 1985.
In May 1985, because appellant was still experiencing difficulty in breathing, appellant's authorized and treating physician, Dr. Castellano, sent appellant to an allergist, Dr. Jack Parrino. After examining appellant and attempting to treat appellant for a possible allergy, Dr. Parrino concluded that appellant's problems were not allergy related. Rather, the doctor found:
As you know, John Farmer was involved in an auto accident on 5-21-84 in which he sustained trauma to his nose when he hit a steering wheel. He underwent nasal reconstructive surgery in May of 1984 and January of 1985. Prior *358 to his accident he had no history of nasal congestive symptoms. Since his most recent surgery he has been able to breathe on the left possibly 70% compared to before and on the right only 10%. Thus, surgery apparently improved the breathing on the left but not on the right. He has had abnormal sinus X-rays in the past suggesting chronic sinusitis as a result. Courses of antibiotics would help clear purulent discharge but were not of much benefit for nasal congestive symptoms. In addition to nasal congestive symptoms he complained of chronic headache localized over his forehead with radiation over the top of his head. A course of Prednisone with Entex was of no benefit. This tends to confirm lack of allergy as an underlying problem.
In summary, I feel that Mr. Farmer has nasal congestion worse on the right with decreased air flow due to anatomical abnormalities secondary to trauma sustained in an auto accident in May, 1984. Attempts at surgical reconstruction in May of 1984 and January of 1985 achieved significant benefit on the left side but were not as successful on the right. I feel in view of his persistent nasal congestive symptoms consideration should be given to a third surgical attempt at correction of this problem.
Apparently, appellee did not compensate Dr. Parrino for his treatment of appellant, as during oral argument both counsel stated appellee still had not satisfied Dr. Parrino's bill.
Roughly ten months after the accident, appellant consulted Dr. Edward Feldman, an orthopedic surgeon, for treatment of complaints of pain relating to appellant's neck and back. Dr. Feldman sent a bill to appellee requesting payment for his services rendered to appellant. Appellee wrote to Dr. Feldman and denied payment. Appellee contended that the treatment was not a "medical expense" as defined under the Florida No-Fault Statute.
At this juncture, appellant's attorney did not respond to appellee's letter denying payment for Dr. Feldman's services. Rather, on both June 28, 1985 and on July 2, 1985, appellant sent letters to appellee requesting lost wages from January 4, 1985 through February 4, 1985 for time lost from work for the reconstructive surgery performed on January 25.
On March 21, 1986, appellant filed an amended complaint against appellee alleging appellee failed to pay appellant's claim for medical bills and lost wages totaling $5,565.00. Appellant, at appellee's request, submitted to an independent medical examination. Dr. U.A. Young, also an orthopedic surgeon, conducted the independent medical examination. He ambiguously concluded in his report to appellee:
This patient was involved in an automobile accident on May 21, 1984 in which he probably sustained a strain type injury to his neck, according to the history. He apparently had no low back complaints until two or three months after the accident and I doubt that his low back symptoms are related to this accident. Apparently his musculoskeletal complaints were insufficient to warrant treatment until March of 1985. It is reasonable that if he was having symptoms at that time he could have sought medical care, however in view of the lack of physical findings I certainly feel that the treatment and diagnostic studies by Dr. Feldman were excessive and unnecessary. There is certainly no real evidence of radiculitis or radiculopathy. If the patient's history is correct in that he was asymptomatic prior to the accident and symptomatic afterwards, I would say his symptoms probably were related to that accident. At the present time there is no objective evidence of any residual injury.
Section 627.736, Florida Statutes (1983), provides that "every insurance policy complying with the security requirements of § 627.733 shall provide personal injury protection to ... persons operating the insured motor vehicle ... to a limit of $10,000 for loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle... ." The insurer must pay "eighty percent of all reasonable expenses for necessary *359 medical, surgical, X-ray, dental, and rehabilitative services" and "sixty percent of any loss of gross income and loss of earning capacity per individual from inability to work proximately caused by the injury sustained by the injured person... ."
"The policy of the courts of Florida when construing provisions of the Florida No-Fault Act has always been to construe the act liberally in favor of the insured." Palma v. State Farm Fire & Casualty Co., 489 So.2d 147 (Fla. 4th DCA 1986). For example, in Palma, where the trial court ruled that "thermograms did not meet the criteria for `necessary medical services'", the appellate court held:
While the record contains evidence which supports the trial court's finding that thermography is of unproven and dubious value in the diagnosis of musculoskeletal disease and nerve root impingement, such evidence does not support the trial judge's conclusion that the use of thermography in the instant case did not constitute a necessary medical service under the No-Fault Act. The broad scope of the medical services covered by the No-Fault Act is highlighted by the inclusion of benefits for remedial treatment and services for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs. § 627.736(1)(a).
Id. at 149.
And, in Banyas v. American Mutual Fire Insurance Co., 359 So.2d 506 (Fla. 1st DCA 1978), the appellate court reversed the trial court's denial of PIP benefits for medical expenses appellant sustained as a result of an automobile accident in which he was involved. The appellant suffered a blow to his chest during the accident. Subsequently, he complained of chest pain. Because his doctor could not determine whether the pain was caused by the automobile accident or was related to appellant's heart condition, his doctor sent him to a cardiologist for consultation regarding a possible heart catheterization. The catheterization showed that appellant's condition related solely to his heart condition. The insurance company refused to pay for expenses associated with the catheterization arguing that such expenses resulted from a preexisting condition. In reversing the trial court's denial of benefits, the appellate court ruled:
The diagnostic work of Dr. Pekaar reveals that appellant's chest problem related solely to his heart condition and had no relation to the accident. This after-the-fact determination, however, does not absolve appellee from liability under its insurance policy for this expense. § 627.736, Florida Statutes, requires that every insurance policy for personal injury protection benefits provide payment for "... all reasonable expenses incurred for necessary medical ... services... ." It is clear from the evidence that Dr. Hardin reasonably found it necessary because of this accident, and appellant's chest pain immediately following such accident, to send him to Dr. Pekaar for a determination of the cause of the chest pain. Such was a reasonable expense incurred for necessary medical services to determine whether or not the accident was the cause of the chest pain experienced immediately following the accident.
Id. at 507.
In the instant case, appellee must pay Dr. Parrino, if it has not already paid Dr. Parrino for the services he rendered to appellant. Dr. Castellano sent appellant to Dr. Parrino when appellant continued to experience difficulty breathing after the reconstructive surgery. Clearly, such was a reasonable expense incurred for necessary medical services related to the automobile accident. Upon remand, the trial court shall require payment, by appellee, of Dr. Parrino's charges.
The trial court erred in denying appellant's medical expenses associated with the examination and treatment by Dr. Feldman. Appellant went to Dr. Feldman for treatment of neck and back pain, pain radiating into both upper extremities, and headaches. Dr. Feldman found that appellant had chronic cervical sprain, chronic thoracic sprain, chronic lumbosacral sprain, post-concussive syndrome, greater occipital neuralgia, facial scarring, and fracture of *360 the nasal bone with deviation of nasal septum, corrected surgically. Dr. Feldman also found that appellant remained symptomatic, that his injuries were permanent in nature, and that he may continue to experience flare-ups of his symptoms indefinitely. It is also interesting to observe that Dr. Parrino's medical notes taken when appellant first consulted Dr. Parrino reveal appellant complained of cervical and low back pain and problems. While Dr. Young concluded that there was no objective evidence of residual injury and that Dr. Feldman's treatment was excessive and unnecessary, he also stated that "[i]f the patient's history is correct in that he was asymptomatic prior to the accident and symptomatic afterwards I would say his symptoms probably were related to that accident." Clearly, Dr. Feldman's examination and treatment was a reasonable expense incurred for necessary medical services related to the automobile accident, and we so hold. Upon remand, the trial court shall enter an order requiring appellee to pay Dr. Feldman's charges.
Appellant also claimed the trial court erred in denying him lost wages. However, appellant failed to prove he was entitled to wages in addition to those already paid. The first wage loss verification form submitted showed appellant was working for Trico Company as a drywall finisher from January 6, 1984 to May 21, 1984 and that appellant was absent from work from May 21, 1984 through August 15, 1984. The second wage loss verification form showed appellant was working for the Tampa Tribune from March 17, 1985 through May 11, 1986. Appellant failed to submit a wage loss verification form for the period of January 4, 1985 through February 4, 1985. The trial court properly denied his claim.
Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion.
HALL and PARKER, JJ., concur.