Ronny J. NORWOOD, et al., Plaintiffs,

v.

ALLIED GROUP, INC., d/b/a Allied
Group, et al., Defendants.

Civil Action No. 93–D–1055.

United States District Court,
D. Colorado.

Oct. 31, 1996.

Lloyd C. Kordick, Colorado Springs, CO,
for Plaintiff/Petitioner.

Michael W. Anderson, Denver, CO, for Defendant/Respondent.

MEMORANDUM OPINION & ORDER

DANIEL, Judge.

## I. INTRODUCTION

This class action, which has been certified by the Court, presents questions of first impression under Colorado law regarding certain coverage provisions of the Colorado Auto Accident Reparations Act, Colo.Rev. Stat. § 10–4–701 et seq. ("CAARA"), commonly known as the No–Fault Act. Recognizing the unique issues of Colorado law presented in this case, and with cognizance of the contours of our system of federalism, on December 11, 1995 this Court certified three (3) questions to the Colorado Supreme Court pursuant to Colorado Appellate Rule 21. On January 4, 1996, the Colorado Supreme Court declined to accept the questions. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

This matter is presently before the Court on the Parties' Cross–Motions for Summary Judgment. In addition, I have considered the supplemental briefing recently submitted by the parties and the arguments advanced at the hearing held on October 16, 1996. By agreement of the parties, the case has been bifurcated to determine the threshold issue of liability on the Cross–Motions, with trials to follow on the issue of damages if liability is found.

## II. FACTUAL BACKGROUND

Plaintiffs are policyholders, insured by Defendants, who have been injured in automobile accidents. Plaintiffs claim that Defendants did not meet their statutory obligation to pay Plaintiffs' reasonable and necessary medical expenses, pursuant to the CAARA. The present controversy emanates from Defendants' use of the "Workers' Compensation Relative Value Schedule" (WCRVS) to determine the amount of reimbursement paid to medical providers for services rendered to policyholders despite a result where the amount approved for payment was, in many instances, far less than the charges for the actual services. As a result, Plaintiffs have been held personally responsible for the shortfalls in Defendants' reimbursements to medical providers, and some Plaintiffs' credit

was impaired as a result of collection efforts. Accordingly, based on the affidavits and other materials filed in connection with the Cross–Motions for Summary Judgment, I find that Defendants' use of the WCRVS caused injuries and damages to the members of the class.

Specific examples of class-members who were harmed by Defendants use of the WCRVS to determine the level and amount of benefits to be paid under CAARA include Ronny Norwood, the named Plaintiff in this suit, Tamara K. Schnabel, and Tom McNally. Mr. Norwood, insured by Defendants and injured in an automobile accident, has been exposed to collection actions for less-than-full reimbursements made by Defendants—justified by Defendants on the grounds that charges were unreasonable according to the WCRVS—to Rocky Mountain Neurological and MRI of Colorado. (*See* Exhibit 9, Plaintiffs' Response Brief, filed December 15, 1994 and Affidavit of Ronny J. Norwood, Exhibit 8, Plaintiffs' Motion for Summary Judgment). Moreover, Mr. Norwood has been forced to choose between litigating with his current physicians—represented by a lawyer hired by Defendants—or face the specter of being held personally responsible for the less-than-full payments of Defendants. *Id.* Similarly, Tamara K. Schnabel, who was insured by Defendants, was forced to pay nearly $175.00 for magnetic resonance imaging charges, in order to avoid litigation with Magnetic Resonance Imaging of Colorado. Ms. Schnabel was compelled to pay the balance of her MRI bill when Defendants informed Magnetic Resonance Imaging of Colorado that they would not pay Ms. Schnabel's full balance because the charges were not "reasonable and necessary" since they exceeded the guidelines set by the WCRVS. (*See* Plaintiffs' Supplement to Brief, at appendix 1, filed October 11, 1996 and Affidavit of Tamara K. Schnabel, Exhibit 5, Plaintiffs' Mo-

tion for Summary Judgment). Finally, Tom McNally, insured by Defendants, was personally responsible for Defendants refusal to pay $21.80 for each of four visits he made to his physician when seeking treatment for injuries sustained in a car accident when Defendants concluded that the charges were unreasonable based on the WCRVS. (Affidavit of Tom McNally, Exhibit 6, Plaintiffs' Motion for Summary Judgment). Mr. McNally was also subject to collection efforts from St. Mary's Hospital and Mesa Collection in relation to an MRI performed as a result of the same accident. (*See* Plaintiffs' Supplement to Brief, at appendix 2, filed October 11, 1996).

Defendants acknowledge that under the CAARA they are obligated to make a determination regarding the reasonableness of claimed medical expenses. They argue, however, that the WCRVS—created from a study solicited by the Colorado Division of Labor pursuant to the mandate of the Workers' Compensation Act of Colorado—provides an objective basis to do so. Moreover, Defendants claim that the WCRVS is not their exclusive basis for determining reasonable charges, but rather is used as a presumptive basis or as a guideline. The Plaintiffs disagree, claiming that the evidence indicates that Defendants use the WCRVS as the exclusive or presumptive basis for determining the reasonable reimbursement.[1]

## III. ISSUES RIPE FOR DECISION:

In this Court's Order certifying a Rule 23(b)(2) Class, the following questions were identified for resolution as matters of law on the cross-motions for summary judgment:

1. Can the WCRVS be used as the exclusive basis to determine whether medical charges are reasonable, pursuant to CAARA?

---

**1.** Although the manner in which the WCRVS has been implemented by Defendants is in dispute, this does not create a genuine issue of material fact. Because this Court concludes, *infra,* that it is improper for the Defendants to use the WCRVS in any manner, it is immaterial whether the Defendants used the WCRVS as an exclusive basis, presumptive basis, or as a guideline. Additionally, the Court recognizes that there is dis-

pute over what permutation of the WCRVS is being used by Defendants. Specifically, the Plaintiffs allege that the 1989 WCRVS is being used to set payout limits. In contrast, the Defendants argue that they are using the 1995 WCRVS to guide their reimbursement amounts. Again, however, this dispute is immaterial because any use of the WCRVS by Defendants is improper.

2. Can the WCRVS be used on a presumptive basis to determine whether medical charges are reasonable pursuant to CAARA?

3. Can the WCRVS be used as a guideline to determine whether medical charges are reasonable, pursuant to CAARA?

## IV. ANALYSIS:

My answer to each of the foregoing questions is no because I conclude that it is improper for Defendants to use the WCRVS, in any manner, to determine the amount of reimbursement due under the CAARA. The CAARA mandates that Defendants make an independent evaluation of what are reasonable and necessary expenses, and requires Defendants to pay those expenses in-full. In my opinion, it is inappropriate for this Court to step into the shoes of the Colorado General Assembly by ordering Defendant to implement use of a particular fee schedule or procedure in setting its reimbursement rates that is not contemplated by the terms and conditions of the CAARA statutes. I recognize that this leaves Defendant with little guidance regarding what is an appropriate tool in setting a level of reimbursement under the No–Fault Act. However, it is up to the Colorado Legislature or Colorado's Division of Insurance to address this omission in the Colorado statutory and regulatory schemes for claims arising under CAARA.

The specific CAARA provision that applies to the issues in this case states, in relevant part:

(1) ... the minimum coverages required for compliance with part 7 are as follows

...

(b) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of *all reasonable and necessary expenses* for medical ... services.

Colo.Rev.Stat. § 10–4–706. (Emphasis added).

The Colorado Legislature, Courts,[2] and Insurance Commissioner[3] have been silent on the process by which insurance companies are to determine what are "reasonable and necessary" expenses under the statute. However, by comparing the legislative intent behind the passage of the CAARA and the Worker's Compensation Act, C.R.S. § 8–40–101 et seq., drawing direction from factually distinguishable Colorado cases, and looking to cases decided in other jurisdictions, I find guidance for my decision.

In short, the legislative intent behind the CAARA was to establish a statutory scheme that "avoid[s] inadequate compensation to victims of automobile accidents." Colo.Rev. Stat. § 10–4–702. The Colorado appellate courts have held that the CAARA is to be "liberally construed to further its remedial and beneficent purposes" because the "legislative intent and policy behind the [CAARA] is to maximize rather than minimize insurance coverage." *Leland v. Travelers Indemnity Co. of Illinois*, 712 P.2d 1060, 1065 (Colo.App.1985) (citations omitted); *see also Travelers Indemnity Co. et al. v. Barnes*, 552

---

**2.** The Defendants have urged that *Leahy v. Guaranty National Ins. Co.*, 907 P.2d 697 (Colo.App. 1995), is informative as to the issues involved in this case. In dicta in *Leahy*, the Colorado court mentioned that, in a specific case involving a plaintiff seeking treble damages for wanton failure to pay a claim, that "a majority of arbitrators concluded that defendant's use of the [WCRVS] was a permissible method for determining reasonableness of medical charges under the Colorado No–Fault Act for the time period in question." *Id.* at 700. The Colorado court, however, did not rule on the propriety of the arbitrators' determination when making its decision. Moreover, this Court's concern that various arbitration boards would reach different conclusions regarding the appropriateness of using the WCRVS was one of the factors that supported the certification of this case as a class action.

Therefore, if anything, *Leahy* clarifies the need for this Court to resolve whether it is proper for insurance companies to use the WCRVS when determining the reasonableness of costs under the CAARA.

**3.** The Court recognizes that Colorado Division of Insurance Rule 5–2–1 allows insurance companies to use the WCRVS to determine whether a claimant has met the monetary threshold that is a prerequisite to application of the CAARA. C.R.S. § 10–4–714(1)(e). However, this use of the WCRVS is not informative on the issue before the Court because, as the plain text of 5–2–1 states, "this standard does not apply to payment of benefits under § 10–4–706(1)(b) and (c), (2)(a), or (3)(b)."

P.2d 300 (Colo.1976) (same). In other words, courts interpreting the CAARA are charged with the obligation to construe the statute—whenever logically possible—to allow recovery for the expenses incurred by automobile accident victims.

In *Palma v. State Farm Fire & Casualty Co.*, 489 So.2d 147 (Fla.App.4th 1986) the Florida Court of Appeals applied a similar liberal construction to the analogous Florida "No–Fault Act." Specifically, the Florida Court held that a "thermography ... of unproven and dubious value" was reasonable and necessary because "the policy of the courts of Florida when construing provisions of the Florida No–Fault Act has always been to construe the act liberally in favor of the insured." *Id.* at 149. Likewise, Michigan appellate courts have applied a liberal construction to their analogous "No–Fault" statute. *See Hicks v. Citizens Ins. Co. of America, et al.*, 204 Mich.App. 142, 514 N.W.2d 511 (1994); *Johnson v. Michigan Mutual Ins. Co.*, 180 Mich.App. 314, 446 N.W.2d 899 (1989).

In contrast, the legislative intent behind the Workers' Compensation Act of Colorado is to minimize costs. The workers' compensation statutory scheme strikes a balance, based on cost-efficiency and cost-spreading, that protects both workers and employers. *See* C.R.S. § 8–40–102(1) (1996 Supp.); *Duran v. Industrial Claim Appeals Office*, 883 P.2d 477, 479, 484–85 (Colo.1994). Specifically, Colo.Rev.Stat. § 8–40–102(1) states,

> It is the intent of the general assembly that the "Worker's Compensation Act of Colorado" be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers *at a reasonable cost to employers*, without the necessity of any litigation, recognizing that the workers' compensation system in Colorado is based on mutual renunciation of common law rights and defenses by employers and employees alike. (emphasis added).

The text of § 8–40–102(1) reflects the historical aspiration of the legislature, based on economic efficiency, to minimize costs and spread losses in the context of workers' compensation. In his seminal treatise on workers' compensation systems, Professor Larson comments, "the American compensation system, unlike the tort system, at the moment of creating liability also creates the means of relieving the employer of the real burden of that liability." Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation*, § 2.70, p. 1:14 (1996). After reviewing Colorado's workers' compensation statutory scheme, I find that the Colorado Legislature, when it established the workers' compensation system in this state, evinced a desire to contain costs through the workers' compensation law. For example, in *Romero v. Industrial Claim Appeals Office of the State of Colorado*, 902 P.2d 896, 900 (Colo.App.1995), the court concluded that a 1991 amendment to the workers' compensation law foreclosing payment of benefits to older injured workers was a measure aimed at containing employers costs. Likewise, in *Riley Family Trust v. Hood*, 874 P.2d 503, 504 (Colo.App.1994), the court concluded that a fee schedule, created pursuant to the workers' compensation statute, was a cost containment measure. This concern with cost containment tracks the history of workers' compensation in Colorado which traditionally imposed strict limits on the amount of recovery allowed and, as late as 1971, limited recovery of treatment benefits to no more than six months. L. 71, p. 907, § 5.

As part of the workers' compensation scheme, and with full cognizance of the historical basis of the workers' compensation system, implementation of the WCRVS was authorized. Colo.Rev.Stat. § 8–42–101(3) (1996 Supp.). In accordance with the intent of the Colorado Legislature to minimize costs associated with workplace accidents, medical bills in excess of the WCRVS are "unlawful, void, and unenforceable." *Id.* By authorizing use of the WCRVS, the legislature required medical providers to bear a portion of the cost (at least by way of minimizing their profits) of workplace accidents. In stark contrast, the CAARA does not have an analogous cost-spreading component; instead, the CAARA contemplates that victims will bear no costs as a result of their misfortune. Therefore, I hold that any use of the WCRVS that results in policyholders being

liable for legitimate medical service costs is incompatible with the CAARA's purpose of fully compensating automobile accident victims for their actual costs incurred.[4]

Moreover, the two Michigan cases cited above buttress this Court's position. Specifically, in *Hicks* and *Johnson*, the Michigan Court of Appeals held that applying the reasonable rates of reimbursement due to hospitals under Medicaid was not appropriate when determining the amount to be reimbursed under the Michigan No–Fault Motorist Insurance Act. In *Johnson*, the Michigan court commented that it was "untenable" to borrow the Medicaid reimbursement figures due to the No–Fault Act's unambiguous statutory language that "was designed to afford prompt and adequate reparation for economic losses, such as medical expenses, incurred by individuals injured in motor vehicle accidents." *Id.*, 446 N.W.2d at 902 (citations omitted). Likewise, it is untenable for Defendants to argue that Colorado's analogous statute allows the amounts to be reimbursed under the CAARA to be divined from a fee schedule created as part of the Workers' Compensation Act.

As a final matter, I note that Plaintiffs, in their recently filed supplemental briefs and at oral argument, have raised a new argument. Specifically, Plaintiffs urge that by reimbursing medical providers less under the WCRVS schedule than they do under PPO plans, Defendants are illegally attempting to force policyholders to select the PPO option. Because I have ruled in favor of the Plaintiffs on other grounds, I need not consider the merits of this argument.

## V. CONCLUSION

For the above stated reasons, I hold that it is unlawful for insurance companies, such as Defendants, to use the WCRVS as the exclusive, presumptive, or guideline basis to determine the amount of reasonable and necessary charges due and payable under the CAARA.

Accordingly, it is hereby

---

4. Although I hold that use of the WCRVS is inappropriate to determine reimbursement rates under the CAARA, it must be noted that Plaintiffs still carry the burden of proving actual damages.

ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED, and Defendants' Motion for Summary Judgment is DENIED. It is further

ORDERED that the parties file a joint status report within twenty (20) days making recommendations on how the issue of damages should be resolved and informing the Court if Plaintiff will seek to expand the certified class.

Additionally, at the subsequent trials on damages, Defendants may avail themselves of any viable defense to answer the claims of individual Plaintiffs.