723 So.2d 271 (1998)
Rose Marie DERIUS, Appellant,
v.
ALLSTATE INDEMNITY COMPANY, Appellee.
No. 97-0126.
District Court of Appeal of Florida, Fourth District.
June 10, 1998.
Rehearing Denied July 10, 1998.
K. Jack Breiden of Breiden & Associates, Naples, for appellant.
Rosemary Wilder, and Richard A. Sherman of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale and Gary Dickstein of Dickstein, Richardson & Reynolds, P.A., West Palm Beach, for appellee.
GROSS, Judge.
The county court has certified two questions to this court pursuant to Florida Rule of Appellate Procedure 9.160(d), which we rephrase as follows:
TO RECOVER MEDICAL BENEFITS IN A LAWSUIT UNDER SECTION 627.736, FLORIDA STATUTES (SUPP. 1994), MUST THE PLAINTIFF PROVE BY THE GREATER WEIGHT OF THE EVIDENCE THAT THE EXPENSES SOUGHT ARE BOTH REASONABLE AND FOR NECESSARY MEDICAL SERVICES?
IN AN ACTION FOR PIP BENEFITS, WHERE A TRIAL COURT CHARGES THE JURY USING THE LANGUAGE OF SECTION 627.736(1)(a), MUST THE COURT FURTHER DEFINE THE *272 TERM "NECESSARY" AS USED IN THE STATUTE?
We have accepted jurisdiction pursuant to Rules 9.030(b)(4)(A) and 9.160(d). We answer the first question in the affirmative and the second in the negative.
Appellant, Rose Marie Derius, was a passenger in a car driven by her husband, which was rear-ended on February 5, 1994. That day, she was treated at a hospital emergency room and released. Her chiropractor diagnosed a soft tissue injury in her neck and began treating her on March 2, 1994.
Allstate, Derius' insurer under the Florida Motor Vehicle No-Fault Law,[1] initially paid for the chiropractic treatments. After three months, Allstate hired another chiropractor to perform a physical examination on Derius. After the examination, the doctor reported his conclusions to Allstate as follows:
[B]ased on my examination today, I am unable to establish the presence of any significant clinical entity which would require continued chiropractic care. In addition, subjectively the patient states that she has not improved despite three months of 3-times per week chiropractic care. Due to the lack of any clinical support for her subjective complaints, as well as the existence of the functional overlay and the reported lack of subjective progress, I am not recommending your consideration of any additional chiropractic care.
As a result of this recommendation, Allstate notified Derius that it would not pay for any chiropractic treatment after June 7, 1994. Derius continued to treat with her chiropractor until September, 1994.
Derius filed suit under the no-fault statute in the county court seeking, inter alia, to recover for her chiropractic treatments under section 627.736(1)(a), Florida Statutes (Supp.1994). Another issue developed at trial was whether Allstate should have paid $75 for an interim examination, instead of $68. In its instructions, the trial court framed the issues for the jury:
The issues for your determination on the claims of the Plaintiff, Rose Marie Derius, against Defendant, Allstate Indemnity Company, are whether any of the chiropractic treatment after June 7, 1994 was necessary and, if so, the total reasonable charges for said chiropractic care.
One additional issue for your determination is what is the total reasonable charge for the interim examination of May 11, 1994.
If the greater weight of the evidence does not support the claim of Plaintiff, Rose Marie Derius, then your verdict should be for Defendant, Allstate Indemnity Company.
However, if the greater weight of the evidence does support the claim of Plaintiff, Rose Marie Derius, then your verdict should be for Plaintiff, Rose Marie Derius, and against Defendant, Allstate Indemnity Company, for the total amount of those reasonable and necessary chiropractic expenses incurred after June 7, 1994 and for the interim examination dated May 11, 1994.
After a lengthy trial, the jury returned a verdict for Allstate on both issues.
Section 627.736(1), Florida Statutes (Supp.1994), requires an insurer to provide personal injury protection (PIP) benefits for "loss sustained ... as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle." Personal injury protection benefits include "[e]ighty percent of all reasonable expenses for necessary medical ... services." § 627.736(1)(a), Fla. Stat. (Supp. 1994).
Under this statute, an insurer is not liable for any medical expense to the extent that it is not a reasonable charge for a particular service or if the service is not necessary. In a lawsuit seeking benefits under the statute, both reasonableness and necessity are essential elements of a plaintiff's case. There is nothing in the PIP statute suggesting a legislative intent to alter the normal dynamics of a lawsuit by placing the burden on the defendant in a PIP case to prove that a proposed charge was unreasonable or that a given service was not necessary.
*273 Derius points to the language of section 627.736(7)(a), which provides that
[a]n insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a report by a physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that treatment was not reasonable, related, or necessary.
This language is part of the independent medical examination requirement of section 627.736(7) which is "intended to give insurers an opportunity to determine the legitimacy of a claim so that an appropriate decision can be made as to whether benefits should be paid." U.S. Security Ins. Co. v. Silva, 693 So.2d 593, 596 (Fla. 3d DCA 1997). The quoted language from section 627.736(7)(a) sets up a procedural requirement that an insurer cannot withdraw payment of a treating physician unless the decision is supported by an expert that the treatment does not comply with the statutory criteria. If the insurer were to act without complying with such a procedural requirement, any termination of payment would be ineffective. In this procedural hurdle, we do not discern a legislative intent to alter the burden of proof in a lawsuit for PIP benefits.
The cases cited by Derius are distinguishable. Mutual Life Ins. Co. of New York v. Ewing, 151 Fla. 661, 10 So.2d 316 (1942), involved an indemnity policy of insurance for total and permanent disability. The insurer recognized the existence of the insured's permanent and total disability and made disability payments from 1931 until October, 1940, when it discontinued payments and demanded that the insured resume paying premiums. The issue at trial was whether the insured continued to be permanently and totally disabled in October, 1940. In such a case, the supreme court stated the rule allocating the burden of proof:
Where ... it is established, as in this case, that a permanent and total disability existed within the purview of the policy and the insurer seeks relief from continuation of payment of indemnities theretofore paid under and within the purview of the policy[,] the burden is on the insurer to establish by the preponderance of the evidence that the condition of the insured is such that he no longer comes within the purview of the policy in this regard.
Id. at 318; see also Aetna Life Ins. Co., Inc. v. Fruchter, 283 So.2d 36, 37 (Fla.1973).
Unlike Ewing, this case does not involve a total and permanent disability policy. Nothing in the Florida Motor Vehicle No-Fault Law suggests a legislative intent that the rule in Ewing applies in PIP lawsuits to the issue of the termination of payments to a treating physician. Ewing did not involve an insurance policy that was required to comply with detailed statutory parameters.
Similarly, Public Health Trust of Dade County v. Holmes, 646 So.2d 266 (Fla. 3d DCA 1994), did not deal with a PIP scenario; rather, the plaintiff hospital sued a patient on a written guaranty of payment to recover for services rendered in a critical care unit. That case's characterization of "medical necessity" as an affirmative defense, even if correct,[2] is not controlling here, *274 where the elements of a plaintiff's case are set forth in a statute. Finally, Exhibitor, Inc. v. Nationwide Mut. Fire Ins. Co., 494 So.2d 288, 289 (Fla. 1st DCA 1986) is inapplicable, since this is not a case where the insurer is trying to show that a loss was due to a cause that was excepted under the policy. See also State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986).
We conclude that the trial court correctly charged the jury on the plaintiff's burden of proof.
As to the second certified question, we find no error in the trial court's charge to the jury. The instruction correctly stated the law applicable to the facts in evidence. See Lynch v. McGovern, 270 So.2d 770, 771 (Fla. 4th DCA 1972); Rivero v. Mansfield, 584 So.2d 1012, 1014 (Fla. 3d DCA 1991), quashed in part, approved in part, 620 So.2d 987 (Fla.1993). The decision regarding Derius' proposed instructions on the issue of necessity was within the discretion of the trial court, which should not be disturbed on appeal absent prejudicial error resulting in a "miscarriage of justice," a state of affairs that did not occur in this case. See Goldschmidt v. Holman, 571 So.2d 422, 425 (Fla. 1990).
Derius is correct that the PIP statute does not define "necessary medical ... services." That very language has been a part of the statute since it was enacted in 1971. Ch. 71-252, § 7, at 1359, Laws of Fla. In Palma v. State Farm Fire & Cas. Co., 489 So.2d 147, 148-49 (Fla. 4th DCA 1986), we observed that in determining what constitutes a "necessary medical service," the statute is construed "liberally in favor of the insured." We reasoned that
[t]he broad scope of medical services covered by the No-Fault Act is highlighted by the inclusion of benefits for remedial treatment and services for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs.
Id. at 149; see also Hunter v. Allstate Ins. Co., 498 So.2d 514, 515-16 (Fla. 5th DCA 1986).
Whether a given medical service is "necessary" under section 627.736(1)(a) is a question of fact for the jury. Donovan v. State Farm Mut. Auto. Ins. Co., 560 So.2d 330, 331 (Fla. 4th DCA 1990), held that a plaintiff could establish both the reasonableness of charges and the necessity of a medical service without expert testimony. Other cases have noted that the "necessity" of a medical service may also be proven through expert testimony. See Farmer v. Protective Cas. Ins. Co., 530 So.2d 356 (Fla. 2d DCA 1988); Banyas v. American Mut. Fire Ins. Co., 359 So.2d 506, 507 (Fla. 1st DCA 1978). The current state of the law is that the issue of necessity in a PIP case is decided by factfinders on a case by case basis, depending on the specific evidence introduced at trial and the arguments of counsel. The absence of a specific statutory definition accords each judge or jury broad discretion in arriving at a decision.
We do not think it is proper to require further definition of a term that the legislature has left as is for 27 years. The legislature is capable of defining "medically necessary" or "palliative care" where it chooses to do so. See §§ 440.13(1)(m) and (o), Fla. Stat. (Supp.1994). By opting not to define the phrase "necessary medical ... services" with precision, the legislature has created a litigation model that vests great discretion in the factfinder, with the potential that different judges and juries will arrive at different results on almost identical facts. If a court were to require in every case a specific definition of a phrase that the legislature has left open, it would be rewriting each of those statutes and altering the dynamics of trial, without any indication that such a result was one that the legislature intended.
The situation presented in this case is analogous to that arising under another portion of the No-Fault Law, section 627.737(2)(b), Florida Statutes (1993), which uses the phrase "[p]ermanent injury within a reasonable degree of medical probability" without defining it. The standard jury instructions do not attempt to define the terms. In its note explaining the absence of a jury *275 instruction on permanency, the Supreme Court Committee on Standard Jury Instructions in Civil Cases observed:
Section 627.737(2), Florida Statutes (1991), does not define "permanent injury within a reasonable degree of medical probability" that is established by expert testimony. Morey v. Harper, 541 So.2d 1285 (Fla. 1st DCA), review denied, 551 So.2d 461 (Fla. 1989); Fay v. Mincey, 454 So.2d 587 (Fla. 2d DCA 1984); Horowitz v. American Motorist Ins. Co., 343 So.2d 1305 (Fla. 2d DCA 1977); see Bohannon v. Thomas, 592 So.2d 1246 (Fla. 4th DCA 1992). Therefore, the instructions do not attempt to define the terms, and leave their explanation to the testimony of the experts and argument of counsel. See Rivero v. Mansfield, 584 So.2d 1012 (Fla. 3d DCA 1991), quashed in part, approved in part, 620 So.2d 987 (Fla.1993); see contra Philon v. Reid, 602 So.2d 648 (Fla. 2d DCA 1992), review granted, 614 So.2d 503 (Fla.), case dismissed, 620 So.2d 762 (Fla.1993).
Fla.Std.Jury Instr. (Civ.) 6.1, Comment 3. The Supreme Court authorized the use of the Committee's proposed instruction on section 627.737(2). Standard Jury Instructions Civil Cases (1.0, 6.1d, MI8), 613 So.2d 1316 (Fla.1993). Acknowledging the approach taken by the Committee in a similar situation, we answer the second certified question by holding that in a jury charge, a trial court is not required to define the term "necessary." The trial court correctly and adequately charged the jury in this case.
On the remaining issues, we find no error in the trial court's rulings on Derius' motions for directed verdict and mistrial. Allstate's reliance on the IME chiropractor's letter to withdraw payment to Derius' chiropractor was in compliance with the requirements of section 627.736(7)(a).
AFFIRMED.
POLEN and STEVENSON, JJ., concur.
NOTES
[1] §§ 627.730-627.7405, Florida Statutes (1993).
[2] One ground upon which the patient in Public Health Trust of Dade County v. Holmes, 646 So.2d 266 (Fla. 3d DCA 1994), defended was that the services rendered were not medically necessary. The trial court placed the burden of proof on the hospital to prove the medical necessity of the services rendered and granted a directed verdict when the hospital failed to produce sufficient evidence on that issue. The hospital argued that the written guaranty relieved it of the responsibility to prove medical necessity. The third district reversed, holding that the issue of medical necessity was an affirmative defense and that the burden of proof was therefore on the defendant patient. 646 So.2d at 267. The opinion does not quote the language of the guaranty, so we cannot gauge how the wording of the guaranty controlled the result. We question whether "medical necessity" is properly characterized as an affirmative defense in all cases where a provider sues a patient over a medical bill. In an action based on express or implied contract for medical services, the performance of only medically necessary services would seem to be at least an implied condition where not expressly addressed. On the other hand, if a provider sues on an account stated and establishes the necessary elements of the cause of action, the burden shifts to the defendant to show that the account is incorrect due to fraud, mistake or error. See Robert C. Malt & Co. v. Kelly Tractor Co., 518 So.2d 991, 992 (Fla. 4th DCA 1988).