406 So.2d 773 (1981)
Lois C. BLANCHARD, et al.
v.
A-1 BIT AND TOOL COMPANY, INC., et al.
No. 12129.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1981.
Wayne C. Giordano, Belle Chasse, for plaintiffs-appellees.
Rutledge & Associates, Edmond J. Harris, Metairie, for defendants-appellants.
Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
CHEHARDY, Judge.
Defendants, A-1 Bit and Tool Company, Inc. (A-1) and Hartford Accident and Indemnity Company (Hartford), appeal only that part of a judgment in favor of plaintiffs, Lois C. and Ivy Blanchard, and against the defendants, awarding Mrs. Blanchard $25,000 for her past pain and suffering and $35,000 for future pain and suffering; awarding Mr. Blanchard $23,633, less a credit of $2,500 stipulated by the parties as having already been paid by the defendants, or the net sum of $21,133, for past loss of Mrs. Blanchard's wages; and awarding Mrs. Blanchard $65,000 for future loss of wages.
Although plaintiffs, by brief, argue conversely that these amounts should be increased, plaintiffs have not filed an answer to the defendants' appeal and, therefore, such increases cannot be considered by this court.
It was stipulated by the parties at the district court level that the defendants were liable to Mrs. Blanchard in this matter in that the driver of a vehicle belonging to A-1, and the assured of Hartford, was the sole cause of the accident under the following stipulated facts: Mrs. Blanchard was driving a 1972 Oldsmobile which was stopped at the highway intersection of Lapalco Boulevard, as it connects with Behrman Highway and the Belle Chasse Highway. The vehicle was rear-ended by the driver of a 1-ton truck belonging to A-1, and the Blanchard car was knocked 15 feet forward from the point of impact into the intersection to the point of collision.
The remaining issues of this case were tried in the district court on May 6, 1980. Dr. Robert A. Fleming, Mrs. Blanchard's treating physician who was accepted by the court as an expert in orthopedic surgery, testified that he first saw her relative to the accident on May 1, 1976, the date she incurred the injury, and again on May 7, 1976. He intermittently saw her up until the date of trial, and he stated that on July 9, 1978 he evaluated her disability as a *774 result of the accident at 15 percent; 7½ percent as a result of neck problems and 7½ percent resulting from low back involvement. He added that in his opinion she was having scarring within the substance of her muscles that was causing her difficulties. The physician stated when he last saw the plaintiff in April of 1980 she complained of discomfort in the back of her neck and she did have limitation of motion both in her neck and low back. He did not feel she could return to work as a janitor, the job she had held for four years prior to and up until the time of the accident.
Dr. Fleming also said he had given Mrs. Blanchard what he termed the "straight leg raising test" many times and that she always complained of pain in her lower back. He added this indicates either scarring within the substance of the muscle or symptomatic degenerative discs. Dr. Fleming noted that although Mrs. Blanchard might recover from her soft tissue injuries, it was improbable because patients with muscular injuries, if they are going to improve, usually do so within a year and a half or two years after the injury.
Dr. Fleming testified that Mrs. Blanchard is able to do some types of work although she can no longer perform the duties of a janitor. He also stated his findings of muscle spasm in this plaintiff were equivocal, meaning she may or may not have had them. Regarding other possible reasons for Mrs. Blanchard's limitation of motion, Dr. Fleming said he had seen her a number of years before the accident for a degenerative disc; however, he added if she were performing her duties as a janitor without difficulty prior to the accident, he would have to say the accident was the cause of her current difficulties.
Mrs. Blanchard testified she was 43 years old at the time of the accident and 47 at the time of the trial. She stated she had a tenth grade education. For four years prior to the accident the plaintiff said she worked as a school janitor and she had missed no work at all as a result of her back. She also said that after the accident she did not attempt to return to work as a janitor, but she did work from April through November of 1979 in a sandwich shop for three hours a day, five days a week. She said, however, she stopped working there because she was experiencing back and neck pain, and she added that at the time of trial she was taking pain medication.
Dr. Phillip H. Meyers, an expert in thermography and radiology, testified that "thermography is and can be a graphic representation of pain objectively" and that on April 26, 1978 Mrs. Blanchard had thermograms of the lumbar cervical and spine regions and lower extremities, which were personally reviewed by him. He further testified that the findings were consistent with irritability in the neck region and the findings in the lumbar region were consistent with nerve root irritation. Also he said that exactly where the patient complained of pain there were abnormal thermographic patterns.
Dr. Carl F. Culicchia, a neurosurgeon, said upon taking a history and examining the plaintiff he concluded there was no neurologic injury, disease or primary neurologic disorder accounting for the patient's symptoms. He added there were no objective, mechanical findings and the subjective findings were inconsistent. Although he stated the patient was able to sit up on the examining table with her legs outstretched before her so as to form a 90-degree angle between her body and legs (without her reporting pain), this was denied by Mrs. Blanchard at the trial.
Reports from Dr. R. C. Llewellyn stated he was convinced Mrs. Blanchard's problems were orthopedic but that she did not have a neurosurgical disability, seemingly confirming the findings of Dr. Fleming. Dr. Irving Redler also stated in his report the plaintiff complained of pain in the lower back during the straight leg raising test.
Dr. Melvin Wolfson, accepted by the court as an expert in the field of economics, and particularly in evaluation of loss and earning capacity in relation to age, calculated wages lost by Mrs. Blanchard from the date of the accident to the trial date totaled *775 $25,133. Subtracting the $1,500 she earned in 1979, he concluded the net amount was $23,633. Dr. Wolfson explained his calculations were based on her gross income because he did not add in fringe benefits which he said would offset taxes withheld from her gross pay.
Based on the U. S. Department of Labor, Labor Force Report Number 187, Dr. Wolfson also said the expected work life from date of trial for a lady of Mrs. Blanchard's age is approximately 14 years, although her life expectancy would be approximately 33 years. He said he multiplied her gross pay by 12 to get an amount of $8,220 per year. He discounted this at 5 percent and the total future losses were concluded by him to be $81,366. Discounted by an interest rate of 7½ percent, he valued future lost wages to be $69,780. All of the above calculations, however, were predicated on allowing for no raises in pay whatsoever. Dr. Wolfson also said assuming a 3 percent yearly increase in wages over the work life, discounting it at 5 percent the present day value would be $97,011, and at 7½ percent, the value would be $82,200. He added also assuming no increase in wages but also assuming the plaintiff could earn $1,500 per year, with a 5 percent discount the figure would be $64,341 and with a 7½ percent discount, $55,179; and he said also assuming a 3 percent yearly increase in the actual wages she would earn ($1,500 a year), discounting at 5 percent, would leave a figure of $76,700, whereas discounting at 7½ percent would be $65,000.
Letters from the superintendent of the Plaquemines Parish School Board, confirming Mrs. Blanchard's rate of pay as $433.79 monthly at the time of the accident, as well as raises given to persons employed in the same capacity since the accident date, are part of the record before this court.
In giving his very well written reasons for judgment, the district court judge said in part:
"From all of the medical testimony and evidence submitted, this Court is firmly convinced that this is one of those very unusual soft tissue injuries which do not heal as usual and produce permanent injuries and that Mrs. Blanchard's injuries that she suffered immediately after the accident, which she has been suffering for the last four years, and which she now suffers, and will suffer in the future, are a direct result of the accident. The Court relies heavily upon the testimony of the treating physician, Dr. Robert Fleming, an orthopedic surgeon, who also treated this lady for some back pains in 1969. Dr. Fleming testified that Mrs. Blanchard's injuries were soft tissue injuries and her main problem consisted of severe limitation of motion of both the neck and the backand this Court noticed on the witness stand that Mrs. Blanchard could not rotate her neck further than 30 or 50 degrees in one direction or the other.
"Dr. Fleming also testified that he felt the best probability at this time was that if Mrs. Blanchard failed to recover from these injuries in four years (when a normal recovery time from such injuries is six weeks to six months) that she would not now recover, and that she would have these injuries permanently. He further testified that in his opinion she had a 15% permanent disability of the body as a whole, assigning 7½ per cent to the neck and 7½ per cent to the back. The Court is further convinced from the continuous history given to Dr. Fleming by Mrs. Blanchard, by the letters from L. M. Tinsley and Raymond Shetley, respective superintendents of the Plaquemines Parish School Board, introduced into evidence, and from the testimony of Mrs. Blanchard herself, whom the court felt to be honest, truthful and sincere, that her injuries and her 15 per cent permanent disability are permanent.
"The Court is also of the opinion, from the same evidence and from the fact that before the accident, Mrs. Blanchard successfully worked for eight years, four years of which were as a janitor at the Belle Chasse High School doing relatively hard manual work and was also able to do all of her own housework, all without any difficulty or pain, whereas after the *776 accident she is severely restricted in these activities, that these disabilities are caused solely and only from the injuries received in the accident, and have nothing to do with the degenerative back problem which she had in 1969, and does not result from any other cause.
"The Court was particularly unimpressed with the testimony of Dr. Carl Culicchia, who apparently testified without proper medical notes and who insisted on confining himself to stating that he could find nothing wrong `neurologically' with Mrs. Blanchard. There was obviously a great deal wrong with this lady and as Dr. Llewellyn found, and he also relied heavily upon the opinion of the treating physician, Dr. Fleming. Dr. Redler saw the patient one time and the Court was likewise not impressed with his report as compared to the treating physician.
"The deposition of Dr. Philip Meyer tended to corroborate the injuries found by Dr. Fleming and his opinions.
"The Court is further convinced that Mrs. Blanchard is permanently disabled from performing her job as a janitor at Belle Chasse High School or from doing any type of work requiring any manual labor, such as sweeping, mopping, lifting, etc., but that she probably can do some type of light work, such as working in a sandwich shop for a few hours a day, which she previously was able to do since the accident.
"For the pain and suffering incurred from her injuries to date, including confinement for two different periods in the hospital and subjecting herself to many medical tests over a period of four years, the Court feels an award of $25,000 is adequate.
"For further future pain and suffering incurred by Mrs. Blanchard, over a life expectancy of 33 years (as testified to by Dr. Melville Wolfson), the Court feels an award of $35,000 is just and adequate, being approximately $1,000 per year.

* * * * * *
"For lost wages of Mrs. Blanchard since the date of the accident until the present time, the Court is granting an award to Mr. Ivy Blanchard as head and master of the community of $23,633.00, in accordance with computations testified to by Dr. Melville Wolfson, an expert in the field of economics, and evaluation of lost earning capacity, less a credit of $2,500 previously paid by defendants, in accordance with the stipulation entered into by the parties, or the net sum of $21,133.00. * * *

* * * * * *
"For future loss of wages, the Court is going to grant an award of $65,000 in accordance with the computations by Dr. Wolfson which assumed that the plaintiff would have a life-work expectancy of fourteen (14) years, that her wages earned, as of those last earned as a janitor for the Belle Chasse High School, would increase at the rate of 3%, annually, including inflation and other factors, and which further assumed that she could earn approximately $1,500.00 per year doing light work a few hours a day such as she had done after the accident, which would also increase at the rate of 3% annually, which, in total sum, would be discounted at 7½% annually because of her opportunity to invest the monies in the future, thus giving a present day discounted value of $65,000.00. Thus, Mrs. Blanchard is receiving a total award of $125,000.00 ($60,000 plus $65,000.00).
"All of the above sums, except the experts' fees, will be subject to legal interest from date of judicial demand until paid."
In the case of Reck v. Stevens, 373 So.2d 498 (La.1979), the court articulated the standard of appellate review when the issue of quantum is before that court on appeal and stated at 501:
"Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.

*777 "With regard to appellate review of the much discretion of the trier of fact in the award of general damages, La.C.Civ.P. art. 1934(3), we stated (after exhaustive review of the facts, and reversing the appellate court for disturbing (on the basis of prior awards) the trier of fact's award) in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 132 (1967) (Italics ours):
"`The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the trial court.... The facts and circumstances in the other neck injury awards, relied upon by respondent as showing that this award was all out of proportion with the previous awards for similar injuries, causes them to have little or no relevancy for purposes of demonstrating the excessiveness of this award.'
"Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much3 discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Wilson Industries, Inc., 341 So.2d 332 (La.)] for purposes of then determining what would be an appropriate award for the present case.

* * * * * *
"However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979)."
In the case before us, we cannot find that clear abuse of discretion on the part of the district court judge that would allow us to disturb the awards of damages made by him. To the contrary, a review of all of the testimony in the record, as summarized above, reveals the trial court's awards and determinations, as explained in his reasons for judgment, all have a reasonable basis.
For the reasons assigned, therefore, the district court judgment is affirmed.
AFFIRMED.