202 N.J. Super. 330 (1985)
495 A.2d 129
NANCY C. FERLISE AND VINCENT J. FERLISE, PLAINTIFFS-RESPONDENTS,
v.
OWEN CHARLES EILER AND K & M AUTO SUPPLY COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1985.
Decided July 2, 1985.
*332 Before Judges FURMAN and HAVEY.
Richard D. Millet argued the cause for appellants (Hampson & Millet, attorneys; Mr. Millet of counsel and on the brief).
Susan Voorhees argued the cause for respondents (Voorhees, Bennett & Wherry, attorneys; Chana Barron on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
In this personal injury action, the jury returned a verdict finding both defendant Owen Charles Eiler and plaintiff Nancy C. Ferlise (plaintiff) negligent, allocating 78% and 22% negligence against the parties respectively. The jury returned a verdict of $50,000.00 in favor of plaintiff and $10,000.00 in favor of plaintiff Vincent J. Ferlise, for his per quod claim.
On appeal defendants argue that the trial judge erred in admitting into evidence thermograms taken of plaintiff during her period of treatment. They contend that plaintiffs failed to *333 present competent evidence that thermograms have achieved general acceptance in the medical community as a reasonably reliable diagnostic tool. Defendants also challenge the liability and damage award as constituting a miscarriage of justice. We affirm the liability verdict but reverse the damage award, holding that plaintiff failed to lay the requisite foundation as to the reliability of thermography in general and the thermograms performed here in particular for the test results to have been admitted.
Thermography, a recent development in the medical field, is essentially "heat photography" which purportedly provides an objective means of measuring soft-tissue injuries and pain. See Procida v. McLaughlin, 195 N.J. Super. 396, 399-400 (Law Div. 1984). The procedure measures differential skin surface temperature by recording the infra-red light emitted by the body. The emitted infra-red light is directly related to the temperature of the point of the body emitting it. The temperature is computerized into a graphic representation of the skin temperature depicted on a television screen. Injuries which result in inflammation, such as sprains and strains to muscles, cause dilation of the blood vessels in the involved area, resulting in the appearance of a warm spot which is recorded by the thermogram machine. A thermogram is a photograph of the graphic representation of the emitted heat from the affected area. See ibid.
A proponent of expert testimony must demonstrate first that the proffered testimony will "enhance the knowledge and understanding of lay jurors ... with respect to other testimony of a special nature normally outside of the usual lay sphere...," State v. Griffin, 120 N.J. Super. 13, 20 (App.Div. 1972), certif. den. 62 N.J. 73 (1972); and second, that the expert's testimony is sufficiently reliable, see State v. Kelly, 97 N.J. 178, 209 (1984); Evid.R. 56(2). To meet the "sufficiently reliable" test, the technique or mode of analysis used and testified to by the expert must have a "sufficient scientific *334 basis to produce uniform and reasonably reliable results so as to contribute materially to the ascertainment of the truth." State v. Kelly, supra, 97 N.J. at 210; State v. Cavallo, 88 N.J. 508, 517 (1982); State v. Cary, 49 N.J. 343, 352 (1967).
That a test or technique has a "sufficient scientific basis" may be demonstrated in any one of three ways: (1) expert testimony as to the general acceptance of the premise being advanced among those in the profession; (2) authoritative scientific and legal writing indicating that the premises enjoys general acceptance in the professional community; and (3) judicial opinions that indicate that the expert's premise has gained general acceptance. See State v. Kelly, supra, 97 N.J. at 210; State v. Cavallo, supra, 88 N.J. at 521.
Since the trial of this matter, Judge Talbott in Procida, supra, 195 N.J. Super. 396, addressed the question of the scientific reliability of thermography and held that a "thermogram is a diagnostic tool with a sufficient scientific basis to produce uniform and reasonably reliable results." Id. at 404. Judge Talbott allowed the thermogram results in evidence, however, only after a lengthy Rule 8 hearing at which experts testified respecting the construction of and operational reliability of the thermographic machine, the need for careful control during operation and the necessity to give pre-operative instructions to the patient, prohibiting such activities as smoking, consumption of hot or cold beverages, use of lotions or ointments, physical therapy, sunbathing and pain medications prior to the administration of the test.
Unlike Procida, the trial judge here held no Rule 8 hearing. He overruled defendants' objection as to the admissibility of the thermograms, erroneously correlating them with X-rays, and held that defendants' objection regarding the reliability of the results was an appropriate subject of cross-examination, and not a basis for excluding the results as evidence.
We are unable to say from the record before us that thermography per se is sufficiently reliable and accepted in the *335 medical community as to permit the admission of thermograms in evidence. Dr. Weiss, plaintiff's family doctor who testified to plaintiff's test results, stated that the "thermogram is a relatively new study that has been in existence now in the field of soft-tissue injuries for about three years...." But he did not testify, nor was any other evidence offered, that the procedure has been generally accepted in the medical community as a reliable diagnostic technique.
Moreover, it is clear from the record before us and Judge Talbott's opinion in Procida that thermogram results are dependent upon proper administration of the test and careful control of external factors before and during the procedure which could directly affect the accuracy of the test result. Foundation evidence must therefore be proffered regarding compliance with medically accepted procedures as to pre-operative instructions to the patient and proper operation of the machine before thermogram results may be admitted in evidence. Dr. Weiss had no apparent special training in thermography. The reading and interpretation of the tests were performed by a radiologist who was not called to testify. No evidence was offered regarding pre-operative instructions, the operability of the thermogram machine, or the scientific basis upon which the results were reached. There was, in short, no showing that the specific tests performed here were "sufficiently reliable."
Plaintiffs refer in their brief to medical and legal writings as well as to the writings cited in Procida, 195 N.J. Super. at 403, as a basis for finding that thermography enjoys general acceptance in the medical community. See State v. Cavallo, supra, 88 N.J. at 522. The writings referred to were not offered below and, other than their citations, are not on the record on appeal. Under the circumstances, we see no basis to review them on our own or to take judicial notice of them as representing a general consensus as to thermography's reliability. See Evid. Rules 9(3)(a) and 10(3).
*336 For the foregoing reasons, we are satisfied that the trial judge erred in admitting plaintiff's thermogram results in evidence. Dr. Weiss testified that plaintiff sustained an acute lumbosacral strain and sprain. It is clear from the record that he relied upon the thermograms in reaching that diagnosis and in rendering his opinion that plaintiff's injury was permanent in nature. We are therefore constrained to reverse both the bodily injury and per quod awards and remand for a retrial as to the issue of damages.
We reject defendants' challenge to the jury's allocation of 78% negligence against it. Plaintiff testified that she was stopped at an intersection, intending to make a left turn, when defendant Eiler, operating a large truck, struck her vehicle in the rear. While stopped, plaintiff observed defendant in her rear-view mirror "not paying attention." Accepting the evidence in a light most favorable to plaintiffs, a reasonable jury clearly could have allocated 78% negligence against defendant for his failure to make proper observation under the attendant circumstances. See Dolson v. Anastasia, 55 N.J. 2, 7 (1969).
We reverse and remand the damage award. Otherwise we affirm. We do not retain jurisdiction.