[No. 6794-7-III.   Division Three.   March 11, 1986.]

CLARENCE E. BURKETT, ET AL, *Respondents*, v. WILLIE NORTHERN, JR., ET AL, *Appellants*.

*Stephen T. Osborne* and *Raekes, Rettig, Osborne, Forgette & O'Donnell,* for appellants.

*David E. Williams, Kenneth J. Pedersen,* and *Critchlow & Williams,* for respondents.

GREEN, C.J.—Willie Northern, Jr., and his wife appeal a jury verdict awarding $27,500 to Dolores S. Burkett and Clarence E. Burkett. The issue on appeal is whether the court erred in admitting testimony on thermography.

This action was brought by the Burketts to recover damages for injuries to Mrs. Burkett arising from an automobile accident on October 9, 1982, with Mr. Northern. The evidence at trial showed the day after the accident, Mrs. Burkett was examined at a hospital and released. She subsequently consulted several doctors complaining of neck, arm and back pain. She was examined by Dr. Gamber on October 18, 1982, and his report revealed no positive findings. The same was true in Dr. Fischer's report on

November 30, 1983. On March 8, 1984, Mrs. Burkett saw Dr. Washington, a neurologist. He testified her general physical examination was unremarkable and her neurological examination showed no evidence of a significant neurological deficit. He conducted an EMG and a nerve conduction study; the results of those examinations were also normal. He diagnosed Mrs. Burkett's problem as post-traumatic cervical and thoracic strain and referred her to Dr. Bathurst for a thermogram. Based upon the results of liquid crystal thermography tests, Dr. Bathurst diagnosed Mr. Burkett's complaints of pain as due to thoracic outlet syndrome. On January 24, 1984, Dr. Gottlieb, a neurologist, examined Mrs. Burkett at Mr. Northern's request. The doctor testified his tests and X rays of Mrs. Burkett showed nothing abnormal.

Prior to trial, Mr. Northern admitted liability, and the parties stipulated the only question for the jury would be the amount of damages. The Northerns' motion in limine to exclude Dr. Bathurst's testimony and the results of the thermographic studies of Mrs. Burkett was denied. The jury returned a verdict in favor of Mrs. Burkett for $27,500. The Northerns appeal.

The Northerns contend expert testimony regarding thermography should have been excluded as it is not reliable nor generally accepted in the medical field. Based on the record before this court, we agree.

Thermography, a recent development in the medical field, is the technique of recording in photographic form heat energy emission patterns radiating from the human body. It is claimed that an injured part of the body radiates greater heat energy than other parts of the body and, thus, provides an objective means of measuring soft tissue injuries and pain. In *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978), the court adopted the standard for admissibility of testimony based on scientific experimental procedures enunciated in *Frye v. United States,* 293 F. 1013, 1014 (D.C. Cir. 1923). The test is whether the scientific principles from which the deductions are made are suffi-

ciently established to have general acceptance in the relevant scientific community as being reliable and accurate. *State v. Martin,* 101 Wn.2d 713, 719, 684 P.2d 651 (1984); *State v. Canaday, supra* at 812–13; ER 702; *see also State v. Maule,* 35 Wn. App. 287, 295, 667 P.2d 96 (1983). ER 702 follows this standard by permitting the trial court, in determining the admissibility of an expert opinion offered in a novel field, to assess the reliability of the theory, methodology, procedure or principle propounded by the expert and the probative value of his testimony.

The only evidence contained in the partial report of proceedings before this court tending to support or show the reliability and general acceptance in the scientific community of thermography was the testimony of Dr. Bathurst, who at the time he saw Mrs. Burkett practiced in Coeur d'Alene, Idaho. He testified he was the first physician in the Inland Empire to do thermography and now there are "numerous" physicians who utilize it. However, he failed to give the specific number or names of such physicians. He also stated publications on thermography indicate it is 97 percent accurate; however, neither the alleged publications supporting his statement nor their names were introduced into evidence. He discussed a study he had conducted on 60 of his patients to determine the relative efficiency of thermography and diagnosis of thoracic outlet compression syndrome in comparison to traditional diagnostic tests. The results of his study were thermography was predictive in 58 of the 60 patients eventually diagnosed as suffering from the syndrome by means of a combination of the standard tests. He indicated that after a paper on his study is published, "the thermogram for thoracic outlet will probably be the standard of industry." Further, in his opinion, thermography is "the most accurate test" for diagnosis of thoracic outlet compression syndrome.

On the other hand, Dr. Washington, a neurologist in Richland, who testified on behalf of Mrs. Burkett, stated thermography as a diagnostic tool is in evolution and insufficient research has been done on it. While not introducing

or naming the scientific article he relied on, he stated an article he had read indicated there were some people who believed thermography was 70 percent reliable. Dr. Washington also testified: (1) He selected Dr. Bathurst to do the thermography testing on Mrs. Burkett because "he was the only person that I could find who had any knowledge or experience in performing the procedure"; (2) he does not do thermograms himself, and there were no doctors actively doing thermograms in the area at the time of the trial except Dr. Bathurst; (3) thermography has not been utilized enough to have received universal acceptance by physicians; and (4) he had referred only four patients for thermograms in the preceding year.

Dr. Gottlieb, a neurologist in Yakima, testified for the defense: (1) As a diagnostic tool thermography is not used by the majority of neurosurgeons, neurologists or orthopedists; (2) there are no doctors nor hospitals in Yakima that use thermography for diagnostic purposes; and (3) while originally thermography was thought to have potential usefulness, it now is considered not of much value. He also stated thermography is not reliable as it is performed on people who already have some type of problem and no thermograms exist of these people prior to incurring their problem. From the literature and conversations with his colleagues in neurosurgery, he is convinced thermography is a nondiagnostic test of little value, is unreliable and there are far better tests.

Based on the record here, the only other evidence regarding thermography before the trial court prior to its decision on Mr. Northern's motion in limine was the March 14, 1983 article by the American Medical Association (AMA) which stated thermography is still "investigational and not yet established." On appeal Mrs. Burkett's counsel asserts the AMA in a June 14, 1983 letter withdrew this assessment of thermography. This is an inaccurate interpretation. The letter states the AMA is holding in abeyance its assessment of thermography and plans to appoint a panel to consider the role of thermography in medical diag-

nosis. This statement by the AMA merely indicates it is going to conduct additional investigative research on thermography before issuing any further opinions about it.

Mrs. Burkett's brief cites cases from other jurisdictions which allowed thermographic testimony. The majority of the cases[1] are from Florida, New Jersey and Louisiana. *Fay v. Mincey,* 454 So. 2d 587 (Fla. Dist. Ct. App. 1984); *Blanchard v. A–1 Bit & Tool Co.,* 406 So. 2d 773 (La. Ct. App. 1981); *Procida v. McLaughlin,* 195 N.J. Super. 396, 479 A.2d 447 (1984). More recently, courts in both Florida and New Jersey refused to admit thermographic testimony because the evidence presented was insufficient to establish the reliability and acceptance in the medical community of thermography. *Crawford v. Shivashankar,* 474 So. 2d 873 (Fla. Dist. Ct. App. 1985); *Ferlise v. Eiler,* 202 N.J. Super. 330, 495 A.2d 129 (1985).

The record here fails to establish thermography is sufficiently reliable and accepted in the medical community to permit admission of the thermographic evidence. Its admission was, therefore, error.

Reversed and remanded.

MUNSON and THOMPSON, JJ., concur.

Reconsideration denied May 5, 1986.

Review denied by Supreme Court July 8, 1986.

---

[1] The other cases involve medical malpractice actions where the doctors failed to utilize any tests, including thermography, to detect breast cancer. *Tribou v. Gunn,* 410 So. 2d 378 (Miss. 1982); *Jones v. Montefiore Hosp.,* 494 Pa. 410, 431 A.2d 920 (1981).