Larry TAGLIATI, Appellant,

v.

NATIONWIDE INSURANCE COMPANY, Appellee.

Jeffrey FUNKHOUSER, Appellant,

v.

NATIONWIDE INSURANCE COMPANY, Appellee.

Jacque KENNEDY, Appellant,

v.

NATIONWIDE INSURANCE COMPANY, Appellee.

Viola HOWARD, Appellant,

v.

NATIONWIDE INSURANCE COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued May 19, 1998.

Filed Oct. 6, 1998.

Reargument Denied Dec. 16, 1998.

Dominic D. Salvatori, Pittsburgh, for appellants.

John B. Cromer, Pittsburgh, for appellee.

Before DEL SOLE, JOYCE and MONTEMURO *, JJ.

JOYCE, Judge:

These consolidated appeals are from the final judgments entered in favor of Appellee, Nationwide Insurance Company (Nationwide) in connection with the underlying actions for payment of first party medical benefits brought by Appellants, Larry Tagliati, Jeffrey Funkhouser, Jacque Kennedy and Viola Howard, pursuant to their policies with Appellee. For the reasons set forth below, we vacate the judgments and remand for further proceedings consistent with this opinion. Before addressing the merits of Appellants' claims, we will recount the pertinent facts of this case.

Each Appellant was injured in an automobile accident in 1987. Each was eligible for first party medical benefits arising under policies issued by Appellee. Appellants all received chiropractic treatment for their injuries. The chiropractors referred Appel-

lants for thermographic studies for purposes of diagnosis and treatment.[1] Appellee refused to compensate Appellants for the cost of the thermographs.

Appellants thereafter instituted suit against Appellee to recoup payment for these expenses. The cases were consolidated for arbitration. Following an arbitration hearing in October, 1988, Appellants were awarded the cost of the thermography plus interest and attorneys' fees. Appellee timely appealed.

A non-jury trial *de novo* was held in August of 1989 following which the trial judge decided in favor of Appellee. Appellants timely filed post-trial motions as well as supplemental post-trial motions. The trial court denied these motions. Appellants timely appealed. This Court vacated the judgments and remanded for further consideration of Appellants' supplemental post-trial motions. *See Kennedy v. Nationwide Insurance Co.*, 412 Pa.Super. 655, 594 A.2d 788 (Pa.Super.1991) (unpublished memorandum).

By the time the case was remanded, the judge who had presided over the trial had left the bench. For reasons that do not appear of record, the post-trial motions were not finally disposed of until 1997. Judgments were then duly entered in favor of Appellee. Appellants timely appealed and present the following issues for review: (1) whether the trial court erred in determining as a matter of law that thermography is not a reasonable and necessary medical treatment; and (2) whether the trial court erred in concluding that Appellee's denial of Appellants' claims was reasonable, thus entitling Appellants' to attorneys' fees pursuant to 75 Pa. C.S.A. § 1798(b).

The role of an appellate court in reviewing the trial court's final judgment is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed er-

---

* Retired Justice assigned to Superior Court.

1. Thermography is a diagnostic procedure that measures infrared energy emitted by the skin. *See* Deposition of Dr. Joseph Novak, 7/12/89, at 28–29 Exhibit B and Deposition of Dr. Basil Marryshow, 6/14/89, at 27 Exhibit 2 (American Medical Association, Informational Council Report, *Thermography in Neurological and Musculoskeletal Conditions* (submitted December, 1987), *reprinted in* Thermology, 1987, at 2:600–607).

ror in the application of law. Furthermore, the findings of the trial judge in a nonjury case must be given the same weight as a jury verdict and will not be disturbed on appeal absent error of law or abuse of discretion. When this [C]ourt reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and, conversely, all unfavorable inferences rejected.

*Romano v. Nationwide Mutual Fire Insurance Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1231 (Pa.Super.1994) (citations omitted). "Since the trial judge is in the best position to judge the credibility of the witnesses, an appellate court may not re-examine the weight to be given to their testimony. Similarly, an appellate court may not substitute its judgment for that of the trial judge." *Alberici v. Safeguard Mutual Insurance Co.*, 444 Pa.Super. 351, 664 A.2d 110, 113 (Pa.Super.1995) (citations omitted).

Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court. *2401 Pennsylvania Avenue Corporation v. Federation of Jewish Agencies of Greater Philadelphia*, 507 Pa. 166, 172, 489 A.2d 733, 736 (1985). With regard to such matters, our scope of review is plenary as it is with any review of questions of law. *Davis v. Berwind Corp.*, 547 Pa. 260, 266, 690 A.2d 186, 189 (1997). We shall evaluate the decision of the trial court as well as Appellants' argument in accordance with these principles.

Appellants initially challenge the trial court's determination that thermography is not a reasonable and necessary medical expense. The Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1712(1) governs the provision of first party medical benefits and provides that:

An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title...shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:

**(1) Medical benefit.**—Subject to the limitations of section 1797 (relating to customary charges for treatment), coverage to provide for reasonable and necessary medical treatment and rehabilitative services, including but not limited to, hospital, dental, surgical, psychiatric, psychological, osteopathic, ambulance, chiropractic, licensed physical therapy, nursing services, vocational rehabilitation and occupational therapy, speech pathology and audiology, optometric services, medications, medical supplies and prosthetic devices, all without limitation as to time, provided that, within 18 months from the date of the accident causing injury, it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury. Benefits under this paragraph may include any nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

75 Pa.C.S.A. § 1712(1).

The instant dispute turns on whether the thermography rendered to Appellants constitutes reasonable and necessary medical treatment so as to be compensable under section 1712(1). Our research has failed to uncover any precedential Pennsylvania appellate cases on this subject.[2] Consequently,

---

**2.** The issue presented here was previously addressed by this court in *Forman v. State Farm Insurance Co.*, 402 Pa.Super. 661, 578 A.2d 42 (Pa.Super.1990), *appeal denied*, 527 Pa. 624, 592 A.2d 45 (1990) (unpublished memorandum). *Forman* involved the question of whether thermography was compensable under the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act), 40 P.S. § 1009.103 and § 202(a). While the No-fault Act and the MVFRL contain similar language, *Forman* cannot be relied upon as binding precedent. *See Vetter v. Fun Footwear*

*Co.*, 447 Pa.Super. 84, 668 A.2d 529, 535 (Pa.Super.1995) (*en banc*), *appeal denied*, 544 Pa. 658, 676 A.2d 1199 (1996) (providing that an unpublished memorandum has no precedential value). *See also* 210 Pa.Code § 65.37A (indicating that an unpublished memorandum shall not be relied upon or cited in any action or proceeding, unless relevant under the doctrine of the law of the case, *res judicata* or collateral estoppel or involves the same criminal defendant in a prior action or proceeding).

both parties reference the law of other jurisdictions. Appellants rely upon caselaw that has found thermography to be compensable. Appellee, on the other hand, seeks to distinguish these authorities and further argues that thermography should not be compensable because it does not meet the *Frye*[3] test governing the admissibility of scientific evidence.[4]

With regard to the issue of whether thermograms constitute admissible scientific evidence under *Frye*, we note that two of our sister states have concluded that they do, provided that an adequate foundation has been laid. *See, e.g., Fay v. Mincey*, 454 So.2d 587, 593–594 (Fla.Dist.Ct.App.1984); *Procida v. McLaughlin*, 195 N.J.Super. 396, 404, 479 A.2d 447, 451 (1984). *But see Crawford v. Shivashankar*, 474 So.2d 873, 875 (Fla.Dist.Ct.App.1985) and *Ferlise v. Eiler*, 202 N.J.Super. 330, 334–335, 495 A.2d 129, 131 (1985) (both of which decline to hold that thermograms constitute admissible scientific evidence based on the lack of a sufficient evidentiary foundation). However, at least three other jurisdictions, as well as one Pennsylvania case from the court of common pleas, have reached a contrary result. *See, e.g., K–Mart Corp. v. Morrison*, 609 N.E.2d 17, 26 (Ind.Ct.App.1993); *Kluck v. Borland*, 162 Mich. App. 695, 699, 413 N.W.2d 90, 92 (1987); *Burkett v. Northern*, 43 Wash.App. 143, 147, 715 P.2d 1159, 1161 (1986), *review denied*, 106 Wash.2d 1008 (1986); *Szmodis v. Geiger*, 43 Pa. D. & C.3d 484, 487–488 (Lehigh Cty.1985). We do not consider any of these decisions to be dispositive because the question of whether thermograms meet the *Frye* test is irrelevant.

The instant appeal does not require us to decide whether thermographic results have gained sufficient scientific acceptance so as to be admissible under *Frye*. Rather, the question at issue here is whether thermography is a reasonable and necessary medical treatment within the meaning of the MVFRL. Section 1712(1) does not make the compensability of reasonable and necessary medical expenses contingent upon proof that the particular treatment, service or device has gained general acceptance by those who practice in the field. The statute is instead broadly phrased and authorizes payment for all reasonable and necessary medical treatment and rehabilitative services, including, but not limited to the wide array of matters set forth above. Moreover, this Court has recognized that while

the MVFRL was enacted as a means of insurance reform to reduce the escalating costs of purchasing insurance[,] ... the underlying objective of the law is to provide broad coverage to assure the financial integrity of the policyholder. The Law [thus] is to be construed liberally to afford the greatest possible coverage to injured claimants. In close or doubtful cases, it is well established that a court should resolve the meaning of insurance policy provisions or the legislative intent in favor of coverage for the insured.

*Danko v. Erie Insurance Exchange*, 428 Pa.Super. 223, 630 A.2d 1219, 1222 (Pa.Super.1993), *affirmed*, 538 Pa. 572, 649 A.2d 935 (1994) (citations omitted).

Medical technology is advancing more rapidly than the law. It is thus conceivable that a cutting-edge procedure, device or service may fall within the meaning of reasonable and necessary medical treatment, even though it has not gained general acceptance within members of the medical community. Mindful of the principles set forth in *Danko*, *supra*, and because the legislature has not chosen to make compensability for medical treatment or services dependent upon a finding that it meet the requisites for the admissibility of scientific evidence, we decline to

---

3. *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923).

4. Thus far, Pennsylvania has continued to adhere to the *Frye* test. *See, e.g., Blum v. Merrell Dow Pharmaceuticals, Inc.*, 705 A.2d 1314, 1317 n. 2 (Pa.Super.1997). Pursuant to *Frye* and its Pennsylvania progeny, it must be shown that there is general acceptance of the scientific evidence's validity by those scientists active in the field to which the evidence belongs. *Blum*, 705 A.2d at 1317. Although our Supreme Court has promulgated the Pennsylvania Rules of Evidence, Pa. R.E. 101–1008, the adoption of the rules does not alter the *Frye* test. *See* 1998 Comment to Pa. R.E. 702. In any event, the Rules of Evidence are presently inapplicable as they do not go into effect until October 1, 1998.

impose such a requirement here. Consequently, we do not deem the cases addressing the admissibility of thermograms to be controlling.[5] *See, e.g., Sabatier v. State Farm Mutual Automobile Insurance Co.,* 323 Md. 232, 250, 592 A.2d 1098, 1106–1107 (1991) (declining to apply test set forth in *Frye* to determine whether thermograms are necessary medical services within meaning of the Maryland Personal Injury Protection (PIP) statute which requires insurers to offer medical benefits for reasonable expenses and necessary medical services; in enacting law, legislature intended to assure prompt compensation for motor vehicle accident victims and did restrict coverage to procedures that satisfy the *Frye* standard); *Thermographic Diagnostics, Inc. v. Allstate Insurance Co.,* 125 N.J. 491, 510, 593 A.2d 768, 779 (1991) (rejecting *Frye* test to determine the reimbursability of medical expenses under New Jersey Personal Injury Protection provisions which obligate insurers to pay reasonable medical expenses).

■ With regard to the precise question presented for review, i.e., whether thermograms constitute reasonable and necessary medical treatment, we observe that there are a handful of jurisdictions that have considered this matter. Three of our sister states with statutes similar to our own have adopted the view that thermograms may be compensable as reasonable and necessary medical services. *See Palma v. State Farm Fire & Casualty Co.,* 489 So.2d 147, 149 (Fla.App. 4 Dist.1986), *review denied,* 496 So.2d 143 (1986); *Sabatier,* 323 Md. at 255–257, 592 A.2d at 1109–1110; *Thermographic,* 125 N.J. at 511–514, 593 A.2d at 780–781. One jurisdiction, Michigan, has deemed thermograms to be noncompensable when performed by a chiropractor or when they are otherwise excluded under a health care provider contract. *See Hofmann v. Auto Club Insurance Association,* 211 Mich.App. 55, 87, 535 N.W.2d 529, 546 (1995) (concluding that

thermography is excluded from the scope of chiropractic because it is not functionally limited to an analysis of the spine; as a result, it is not subject to payment as a benefit under Michigan's No–Fault Act) and *Karaskiewicz v. Blue Cross & Blue Shield of Michigan,* 126 Mich.App. 103, 108, 336 N.W.2d 757, 759–760 (1983) (finding that thermograms were not compensable where health care provider's contract stated that benefits were not provided for services, care or treatment that either was not medically necessary according to accepted standards of practice or was experimental and there was sufficient evidence of experimental nature of thermograms).

The instant matter does not involve thermograms performed by a chiropractor.[6] Instead, the thermograms were performed by or under the direction of and interpreted by Dr. Marryshow, a medical doctor. Moreover, the insurance policy neither excluded thermographic studies nor otherwise limited compensable medical expenses to those that have gained general acceptance by the medical community. We thus do not find the views expressed by the Michigan appellate courts to be instructive. Rather, we are persuaded by the reasoning espoused in *Palma, Sabatier* and *Thermographic.*

In each of these cases, the statutes mandated that the insurers provide medical benefits for reasonable and necessary medical expenses. *See Palma,* 489 So.2d at 148 (applying F.S.A. § 627.736(1)(a), which required every insurance policy to provide protection for eighty percent (80%) of all reasonable expenses for necessary medical services); *Sabatier,* 323 Md. at 234, 592 A.2d at 1099 (interpreting Maryland Code, Article 48A, § 539, which required every automobile liability insurance policy to afford medical benefits for reasonable expenses for necessary medical services); *Thermographic,* 125 N.J. at 507, 593 A.2d at 777 (construing N.J.S.A § 39:6A–2 and § 39:6A–4, which mandates

---

**5.** Given our conclusion, it follows that nothing in our opinion should be construed as a determination regarding the admissibility of thermographic evidence under *Frye.*

**6.** Although we distinguish the Michigan caselaw on this basis, the question of whether thermo-

grams are performed by a chiropractor or medical doctor does not affect our holding because section 1712(1) encompasses chiropractic services and treatment. 75 Pa.C.S.A. § 1712(1), *supra.*

that automobile liability polices cover the payment of medical expenses; which include expenses for medical treatment, diagnostic services or other reasonable and necessary expenses). The courts liberally interpreted these provisions in light of the objectives sought to be achieved by their respective statutes, i.e., the goal of minimizing insurance costs while providing prompt and efficient compensation for auto accident victims. *Palma,* 489 So.2d at 149; *Sabatier,* 323 Md. at 249–250, 255, 592 A.2d at 1106–1107, 1109; *Thermographic,* 125 N.J. at 509, 511–512, 593 A.2d at 779, 780. Accordingly, the courts found that thermography constituted a medical service that was compensable under the applicable statutes. *Palma,* 489 So.2d at 149–150; *Sabatier,* 323 Md. at 255, 592 A.2d at 1109; *Thermographic,* 125 N.J. at 512–514, 593 A.2d at 780–781.

Like the statutes at issue in *Palma, Sabatier* and *Thermographic,* the MVFRL provides for the payment of "reasonable and necessary medical treatment and rehabilitative services" including, but not limited to, those arising out of chiropractic treatment. 75 Pa.C.S.A. § 1712(1). The legislature has not defined the terms reasonable and necessary. We must therefore give those terms their common and ordinary meaning. *See* 1 Pa.C.S.A. § 1903(a) (directing that words and phrases shall be construed according to rules of grammar and according to their common and approved usage, unless they are defined or have acquired a peculiar and appropriate meaning). We must also interpret section 1712 in light of the rules of construction set forth in 1 Pa.C.S.A. § 1921 and § 1922 (governing the ascertainment of legislative intent).

As previously discussed, this Court has found that while the MVFRL was enacted to reduce the escalating costs of purchasing insurance, the underlying objective of the law is to provide broad coverage to assure the financial integrity of the policyholder and must be construed liberally to afford the greatest possible coverage to injured claimants. *Danko, supra.* We accordingly follow the decisions of our sister states and hold that thermography falls within the definition of reasonable and necessary treatment which

is compensable under the policies issued by Appellee. However, our conclusion does not mean that thermography is compensable in all circumstances.

■ We are cognizant of the cost containment goals of the MVFRL. *See Rump v. Aetna Casualty and Surety Co.,* 551 Pa. 339, 345, 710 A.2d 1093, 1096 (1998) (commenting that the legislative concern over the increasing costs of automobile insurance is the public policy which is to be advanced when interpreting the statutory provisions of the MVFRL). We are likewise aware of the possibility that some health care providers may apply treatments indiscriminately. Mindful of these considerations, we believe that the decision of whether thermography, or any other treatment for that matter, is reasonable and necessary is one which must be viewed under an objective and reasonable standard. *Sabatier,* 323 Md. at 255, 592 A.2d at 1109; *Thermographic,* 125 N.J. at 512, 593 A.2d at 780. In other words, an insured must demonstrate that the treatment was warranted by the circumstances. *Sabatier,* 323 Md. at 256, 592 A.2d at 1110; *Thermographic,* 125 N.J. at 512, 593 A.2d at 780. In addition, the value of the treatment must be verified by credible and reliable evidence. *Thermographic,* 125 N.J. at 512, 593 A.2d at 780. Imposition of these requirements comports with the cost reduction goals sought to be achieved by the MVFRL, yet allows for the reimbursement of treatment that has a medically recognized value, even if it is innovative or experimental.

■ Application of these considerations persuades us that the trial court erred in determining as a matter of law that the thermography was not compensable. In this case, the parties stipulated to the following relevant facts: (1) that the charges for the thermography were reasonable and customary; (2) that the thermograms were necessary in order to diagnose Appellants' injuries; (3) that the thermograms were ordered as part of the treatment of Appellants' injuries; and (4) that, as opined by Appellants' expert, Dr. Marryshow, thermography is widely used and is helpful in determining the existence of soft tissue injuries. *Kennedy v. Nationwide,* Nos. 977–980 Pittsburgh 1990,

unpublished memorandum at 4, 412 Pa.Super. 655, 594 A.2d 788 (Pa.Super. filed April 19, 1991); Trial Court Opinion, filed 6/12/90, at 1. Without citation to any authority or any explanation of its reasoning, the trial court summarily concluded that the cost of the thermograms was not compensable. Trial Court Opinion, filed 6/12/90 at 1.

We previously determined that thermography may be a compensable expense. Moreover, as stipulated by the parties, the treatment was warranted in each of these cases. The diagnostic value of the thermography was further supported by credible and reliable evidence. Under these circumstances, the trial court erred in finding in favor of Appellee. Accordingly, we reverse and remand for the entry of an appropriate judgment in favor of the respective Appellants.

■ Our inquiry is not at an end as we must next determine whether Appellants are entitled to attorneys' fees. With regard to this issue, the MVFRL provides:

In the event the insurer is found to have acted with no reasonable foundation in refusing to pay the benefits enumerated in subsection (a) when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon the actual time expended.

75 Pa.C.S.A. § 1798(b).[7] Appellants thus must demonstrate that the insurer acted with no reasonable foundation in denying their claims in order to be entitled to attorneys' fees. Based on the evidence of record, we cannot conclude that the trial court erred in refusing to award attorneys' fees here.

■ Although our research has failed to uncover any cases interpreting section 1798(b), there are cases arising under a substantially similar provision of the No-fault Act, 40 P.S. § 1009.107(3). In construing the No-fault Act, this Court has observed that the absence of judicial precedent may not invariably provide an insurance carrier with a reasonable foundation for denying a claim. *Steppling v. Pennsylvania Manufacturer's Association Insurance Co.*, 328 Pa.Super.

419, 477 A.2d 515, 522 (Pa.Super.1984). However, where a non-frivolous issue is one of first impression, that fact is entitled to substantial weight in determining whether the denial of a claim is without reasonable foundation. *Id.* Section 1009.107(3) also has been interpreted to require a finding of "bad faith" on the part of the insurer. *Collins v. Allstate Indemnity Co.*, 426 Pa.Super. 197, 626 A.2d 1162, 1171 (Pa.Super.1993), *affirmed*, 541 Pa. 45, 660 A.2d 50 (1995).

As we previously noted, there is no precedential appellate authority in Pennsylvania which has addressed the precise issue raised in this case. Moreover, with the exception of *Palma*, the other authorities upon which we relied, i.e., *Sabatier* and *Thermographic, supra*, were not definitively resolved by the highest appellate courts of their respective states until well after the trial in this case. Appellee's denial of Appellants' claims was further premised, in part, upon the fact that there is conflicting authority as to whether thermography has gained general acceptance by health care providers. N.T. 7/17/89 at 11–12, 14. In addition, Appellee presented the testimony of its claims manager, Jack Boling, Jr., who indicated that he had reviewed various medical articles as well as Pennsylvania cases, and the trial court case in *Palma, supra*, before denying Appellants' claims. *Id.* at 18–21, 24, 25, 27–28, 29, 36–37.

The instant appeal unquestionably involves a non-frivolous matter. Notwithstanding Appellants' efforts to contort the evidence, there is nothing which would suggest that Appellee acted in bad faith in denying Appellants' claims. Given the dearth of relevant caselaw and the existence of conflicting views within the medical community as to the value and efficacy of thermography as a diagnostic tool, Appellee had a reasonable foundation in refusing to pay Appellants' claim for first party medical benefits. Consequently, the trial court did not err in refusing to award attorneys' fees.

In sum, we hold that thermography is compensable as a reasonable and necessary medical treatment under 75 Pa.C.S.A.

---

7. The benefits enumerated in section 1798(a) include first party benefits under subchapter B. 75 Pa.C.S.A. § 1798(a). The medical benefits at issue here are first party benefits under subchapter B. *Id.* at § 1712(1).

§ 1712(1), provided that the insured proves that the treatment was warranted and is of value. Because Appellants sustained their burden of proof, the trial court erred in denying Appellants' claims. Notwithstanding our determination that thermography is a compensable medical expense, we find that Appellants are not entitled to an award of counsel fees because Appellee had a reasonable foundation for denying Appellants' claim. In view of our disposition, we vacate the judgments and remand this matter to the trial court. Upon remand, the trial court is to calculate the benefits owed to each Appellant, as well as the interest thereon, *see* 75 Pa.C.S.A. § 1798(b), *supra,* and enter an appropriate judgment in favor of each Appellant.

Judgments vacated. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.