NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1093
_____

JOHN R. BENSCOTER, individually and as representative
of a class of similarly situated individuals,
Appellant

v.

NATIONWIDE MUTUAL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 4-22-cv-01142)
District Judge: Honorable Matthew W. Brann
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 2, 2024

Before: SHWARTZ, MATEY and FISHER, *Circuit Judges*.

(Filed: November 29, 2024)
_____

OPINION*
_____

FISHER, *Circuit Judge*.

This appeal arises out of an insurance coverage dispute between plaintiff John R.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Benscoter and his insurer, Nationwide Mutual Insurance Company. Nationwide covered Benscoter's medical treatment following an automobile accident but terminated his benefits after it requested that he undergo a medical examination that determined he was back to his pre-accident health. The day before the examination, the Supreme Court of Pennsylvania held contractual policies providing for insurer-mandated medical examinations to be void because they violate state public policy.[1] Benscoter later filed a complaint containing five claims, only one of which is at issue on appeal: his breach of contract claim.[2] The District Court dismissed this claim under Federal Rule of Civil Procedure 12(b)(6), holding Benscoter failed to allege injury and causation.[3] Benscoter appeals. We will affirm.[4]

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."[5] In considering a motion to dismiss, "we accept all

---

[1] *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110, 1126–27 (Pa. 2019).

[2] The District Court converted Nationwide's initial motion to dismiss to a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), and granted summary judgment on Benscoter's other claims for damages and declaratory and injunctive relief under 75 Pa. Cons. Stat. § 1796 and for denial of insurance benefits in bad faith. *Benscoter v. Nationwide Mut. Ins. Co.*, No. 22-00142, 2023 WL 5409937, at *3–12 (M.D. Pa. Aug. 22, 2023).

[3] *Benscoter v. Nationwide Mut. Ins. Co.*, No. 22-00142, 2024 WL 115984, at *2–3 (M.D. Pa. Jan. 10, 2024).

[4] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts). We exercise de novo review of a district court's grant of a motion to dismiss. *Kalu v. Spaulding*, 113 F.4th 311, 324–25 (3d Cir. 2024) (motion to dismiss).

[5] Fed. R. Civ. P. 12(b)(6).

factual allegations as true, constru[ing] the complaint in the light most favorable to the plaintiff."[6] The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7]

Under Pennsylvania law, "[t]he necessary material facts that must be alleged for [a breach of contract] action are simple: there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach."[8] Moreover, the plaintiff is entitled to recover for damages pursuant to a breach of contract where they "show a causal connection between the breach and the loss"[9] and the damages are the kind that "naturally and ordinarily result from the breach, or . . . were reasonably for[e]seeable and within the contemplation of the parties at the time they made the contract, and . . . can be proved with reasonable certainty."[10] It is undisputed that Benscoter was insured by Nationwide through a valid insurance contract. However, the District Court held that Benscoter failed to allege damages and causation.[11] Benscoter presents a myriad of

---

[6] *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[8] *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).

[9] *Logan v. Mirror Printing Co. of Altoona*, 600 A.2d 225, 226 (Pa. Super. Ct. 1991); *see also Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 231 (3d Cir. 1995).

[10] *Vinculum, Inc. v. Goli Techs., LLC*, 310 A.3d 231, 250 (Pa. 2024) (internal alterations omitted) (quoting *Taylor v. Kaufhold*, 84 A.2d 347, 351 (Pa. 1951)).

[11] *Benscoter*, 2024 WL 115984, at *3.

arguments about why the District Court erred.[12]

Under 75 Pa. Cons. Stat. § 1796(a), part of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL),[13] an insurer seeking to compel a claimant for first-party medical benefits to undergo a medical examination must (1) file a petition with a court of competent jurisdiction and (2) show good cause for the examination.[14] Where good cause is demonstrated, the court appoints a doctor, provides "adequate notice" to the claimant, and sets the "manner, conditions and scope of the examination."[15] Failure to comply with the § 1796(a) procedure to compel an examination may lead to a breach of contract.

Benscoter's policy does not reflect Pennsylvania's statutory scheme. Instead, it provides that "[t]he insured will . . . if injured, submit to examinations by company-selected physicians as often as the company reasonably requires."[16] The policy entitles Benscoter to medical benefits after eighteen months only where "it is determined with reasonable medical probability that further expenses may be incurred as a result of the [covered] injury."[17] Accordingly, eighteen months after Benscoter's accident, Nationwide

---

[12] Benscoter challenges the District Court's legal conclusions regarding causation made in the summary judgment order and motion to dismiss order on the same grounds. Because Benscoter's arguments concern only questions of law and because Benscoter treats the orders in tandem, so too do we.

[13] 75 Pa. Cons. Stat. §§ 1701–99.7.

[14] *Id.* § 1796(a).

[15] *Id.*

[16] JA337.

[17] JA324.

requested an examination to determine whether he had recovered.

When Nationwide made this request, the Supreme Court of Pennsylvania had not yet interpreted the contrast between the MVFRL and policy provisions requiring insurer-run examinations. One day before Benscoter attended Nationwide's requested examination, the Pennsylvania Supreme Court held—in an answer to a certified question from our Court—that provisions that require the insured to submit to medical examinations requested by the insurer and conducted by a doctor selected by the insurer are void as against public policy.[18] Instead, the Court held, the proper method for an insurer to obtain an examination in Pennsylvania is outlined in § 1796(a).[19] The parties do not dispute that Nationwide did not utilize that process.

First, Benscoter argues the District Court erred in holding he inadequately pled causation. The physician who examined Benscoter found that his ongoing shoulder pain was "due to calcific tendinitis" which was "not causally related to the reported motor vehicle accident," and that Benscoter had "returned to pre-accident status."[20] After that, Nationwide stopped paying benefits. Benscoter contends the examination is void; therefore, Nationwide lacked grounds to discontinue benefits.

---

[18] *Sayles*, 219 A.3d at 1112.
[19] *See id.*; 75 Pa. Cons. Stat. § 1796(a).
[20] JA 463–64.

Benscoter relies on *Sayles* to support his theory that the examination is void.[21] He argues that Nationwide unlawfully compelled the exam, but "*Sayles* voided that paradigm and held that medical benefits could only be denied if specific legal requirements clearly set forth in [§] 1796 were met by the insurer."[22] But *Sayles* does not prohibit insurers from requesting or relying on medical examinations. Rather, *Sayles* clarifies that § 1796's purpose is to "balance[] the right of the insurer to obtain needed information for the payment of first-party medical claims with the right of the insured not to be subject to unwarranted intrusions on his or her privacy by being subject to repeated and unnecessary medical examinations."[23]

Process aside, Benscoter alleged that he needed further treatment but failed to allege facts that would plausibly support that assertion. Benscoter characterized the results of the examination as "inaccurate and wrong" and "the product of bias and interest."[24] We do not assume the truth of "naked assertions" and "conclusory statements" like these, which are "devoid of further factual enhancement."[25] Benscoter failed to establish the causal link needed for a cognizable breach of contract claim,

[21] The parties disagree whether Benscoter attended the medical examination voluntarily or was unlawfully compelled to do so. We will not address this dispute, as it does not affect the merits of this appeal.

[22] Appellant's Br. 17.

[23] 219 A.3d at 1124.

[24] JA508.

[25] *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678)).

despite three opportunities to do so. As this missing element is dispositive, we need not address what kind of relief would be appropriate for such a breach.

Second, Benscoter argues the District Court erred in holding he lacked an "unqualified" right to his medical benefits. However, "an insured must demonstrate that the treatment was warranted by the circumstances."[26] Requiring Benscoter to establish his entitlement to benefits also does not wrongly shift the burden under § 1796(a). It is true that the insurer has the burden to prove, in the § 1796 court proceeding, why a medical examination is needed—but the insured need not prove why it is not.[27] This burden differs from whether a claimant must show entitlement to further benefits to establish damages when asserting a breach of contract claim. By asking Benscoter to allege his right to benefits, the District Court simply required Benscoter to plead all elements of his claim. The examination found Benscoter back to his pre-accident health, and he failed to plausibly allege otherwise.

Third, Benscoter argues the District Court misapprehended the significance of *Thompson v. Workers' Compensation Appeal Board (Exelon Corporation)*.[28] There, Thompson's workers' benefits had been reduced from full to partial based on an Impairment Rating Evaluation (IRE),[29] a physician evaluation of the claimant's "degree

---

[26] *Tagliati v. Nationwide Ins. Co.*, 720 A.2d 1051, 1056 (Pa. Super. Ct. 1998).
[27] *Sayles*, 219 A.3d at 1126 n.12.
[28] 168 A.3d 408 (Pa. Commw. Ct. 2017).
[29] *Thompson*, 168 A.3d at 409–11.

7

of impairment" that an employer was permitted to demand.[30] But after Thompson's IRE took place, "the entire IRE process" had been "essentially struck" from the Workers' Compensation Act.[31] Therefore, the Court held that Thompson's benefits could not be reduced from full to partial based on the IRE.[32]

Benscoter argues that *Thompson* shows that his benefits may not change based on an examination that did not comply with § 1796(a). But unlike in *Thompson*, *Sayles* did not eliminate insurers' ability to use medical examinations to determine benefits. *Sayles* instead confirmed that § 1796(a) provides the required process for obtaining an examination in Pennsylvania.[33] Thus, Benscoter's examination is not void, nor is Nationwide responsible for Benscoter's unpaid medical bills.

Benscoter concludes by asking us to certify a question of state law to the Pennsylvania Supreme Court: whether an insurer "may deny medical benefits to its insured based upon the opinion and/or report of the expert who examined the insured based on the void policy [medical examination] attendance requirement."[34] We decline to certify this or a similar question. In certifying a question of state law to the highest court of a state,[35] we consider (1) whether the question's resolution is unclear and controls an

---

[30] *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 830 (Pa. 2017).
[31] *Thompson*, 168 A.3d at 412–13 (citing *Protz*, 161 A.3d 827).
[32] *Id.*
[33] *See Sayles*, 219 A.3d at 1126–27.
[34] Appellant's Br. 27–28; App. Dkt. 23.
[35] 3d Cir. L.A.R. Misc. 110.1.

issue in the case; (2) the importance of the question; and (3) judicial economy.[36]

Pennsylvania courts stress the importance of uncertainty in the determination of whether to accept a certified question.[37] Benscoter's proposed question already has a clear answer under Pennsylvania law,[38] the question will not determine the outcome of the case because Benscoter failed to plausibly allege that the examination's results were incorrect, and certification will drain judicial resources by unnecessarily occupying two courts with the same issue.[39] The circumstances of this appeal do not merit certification.

For the foregoing reasons, we will affirm.

---

[36] *United States v. Defreitas*, 29 F.4th 135, 141–42 (3d Cir. 2022).

[37] *See* 210 Pa. R. App. P. § 3341 (providing that the Pennsylvania Supreme Court accepts certification "only where there are special and important reasons therefor," including questions of first impression and conflicting decisions).

[38] *See Borough of Longport v. Netflix, Inc.*, 94 F.4th 303, 307 n.17 (3d Cir. 2024) (denying certification where the answer to the proposed question was clear).

[39] *See Defreitas*, 29 F.4th at 141 ("[A]n immaterial question should not be certified.").